IN THE SUPREME COURT OF TENNESSEE

AT JACKSON



FILED

**December 31, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff-Appellee, | ) | **Filed: December 31, 1997** |
| | ) | |
| v. | ) | HENRY CRIMINAL |
| | ) | |
| RAY ANTHONY BRIDGES, | ) | Hon. Julian P. Guinn, |
| | ) | Judge |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | No. 02S01-9606-CC-00053 |
| | ) | |

For Plaintiff-Appellee:

John Knox Walkup
Attorney General & Reporter
Nashville, Tennessee

Michael E. Moore
Solicitor General
Nashville, Tennessee

Gordon W. Smith
Associate Solicitor General
Nashville, Tennessee

G. Robert "Gus" Radford
District Attorney General
Huntingdon, Tennessee

For Defendant-Appellant:

Larry E. Fitzgerald
Memphis, Tennessee

## O P I N I O N

JUDGMENT OF COURT OF CRIMINAL APPEALS
REVERSED; CONVICTION VACATED;
CHARGE DISMISSED.                                    PER CURIAM.

The primary issue in this appeal is whether the warrantless seizure of cocaine from the defendant's person during a detention and frisk was constitutionally permissible under the "plain feel" or "plain touch" doctrine expounded in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In this case, the trial court denied the defendant's motion to suppress, and thereafter, the defendant pled guilty to possession of cocaine with intent to sell, but reserved the right to appeal the constitutionality of the warrantless seizure pursuant to Tenn. R. Crim. P. 37(b)(2).[1] The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress. Thereafter, we granted permission to appeal.

A majority of this Court has determined that the initial stop and frisk was based upon reasonable suspicion supported by specific and articulable facts. However, a majority of this Court has also concluded that the evidence preponderates against the trial court's finding that the officer had probable cause to believe the object felt during the frisk was contraband. Consequently, the judgment of the Court of Criminal Appeals upholding the trial court's denial of the motion to suppress is reversed. The defendant's conviction is vacated, and the charge is dismissed.

---

[1]Rule 37(b)(2)(I), Tenn. R. Crim. P., provides in pertinent part as follows:
> (b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (I) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case. . . .

## BACKGROUND

The proof at the suppression hearing showed that at 2:47 p.m. on December 23, 1993, Officer D.W. Blackwell of the Paris Police Department had a phone conversation with a confidential informant who had provided reliable information in the past leading to a conviction on a cocaine charge. According to the informant, the defendant, Ray Anthony Bridges, was selling crack cocaine "right then" at a club called "Preacher's." The informant further said that Bridges, was carrying cash and drugs on his person. Officer Blackwell had previously received "half a dozen or so" tips regarding the defendant's dealing crack cocaine in that area. Officer Blackwell proceeded to Preacher's, arrived approximately thirty minutes later at 3:21 p.m, and found Bridges sitting at a table inside Preachers engaged in conversation. Aware that Bridges previously had been convicted of felony assault and recently had been involved in an armed altercation with police, Officer Blackwell identified himself and ordered Bridges to stand against the wall. Officer Blackwell then patted down the outside of Bridges clothing to ensure he was not carrying weapons. During the patdown, Officer Blackwell felt a small object "in the shape of a pill bottle" in the defendant's right jacket pocket and, recognized it as "the kind that a lot of other crack dealers will use to keep their crack in." Officer Blackwell seized the bottle, and upon inspection, determined that it contained crack cocaine, and he also found a knife in the defendant's right pants pocket. As a result, Bridges was arrested, and a further search was conducted of the defendant's person, during which Officer Blackwell discovered a plastic bag of cocaine "in the same pocket" from which the pill bottle containing crack had been removed.

The trial court denied the defendant's pretrial motion to suppress the evidence, and, upon appeal, the Court of Criminal Appeals affirmed the denial. For the reasons hereafter explained, a majority of this Court now concludes that seizure of the pill bottle violated the defendant's constitutional rights. Accordingly, the judgment of the Court of Criminal Appeals upholding the trial court's denial of the motion to suppress is reversed.

## STANDARD OF REVIEW

This case involves the review of a trial court's findings of fact and law in disposing of a motion to suppress. In State v. Odom, 928 S.W.2d 18 (Tenn. 1996), this Court clarified the standard to be applied by an appellate court when reviewing a trial court's findings of fact on suppression issues.

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

Id. at 18. However, the application of the law to the facts found by the trial court is a question of law which this Court reviews de novo. State v. Yeargan, ___ S.W.2d ___, ___ (Tenn. 1997).

-4-

## CONSTITUTIONAL PROVISIONS

We begin our analysis of the issue in this appeal with the text of the applicable constitutional provisions. The Fourth Amendment [2] to the United States Constitution provides:

> **Unreasonable searches and seizures. -** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article 1, Section 7 of the Constitution of Tennessee guarantees

> that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997), quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

---

[2] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996).

The defendant contends that no exceptions to the warrant requirement are applicable in this case and that Officer Blackwell had no right to detain or search him. The State, on the other hand, argues that Officer Blackwell had probable cause to arrest the defendant and that the search of the defendant's person was permissible as a search incident to an arrest, an exception to the warrant requirement. Alternatively, the State contends that the initial detention and patdown search were valid as a stop and frisk under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the seizure of the evidence permissible under the plain touch doctrine.

## SEARCH INCIDENT TO A LAWFUL ARREST

Because a search incident to a lawful arrest is an exception to the warrant requirement which would independently support the warrantless search of the defendant's person and seizure of the pill bottle, we first determine whether the search and seizure in this case was pursuant to a lawful arrest. See Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); State v. Marshall, 870 S.W.2d 532, 540 (Tenn. Crim. App. 1993).

-6-

Both the Fourth Amendment and Article I, Section 7, require the existence of "probable cause" for making an arrest without a warrant. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed. 2d 142 (1964); State v. Jacumin, 778 S.W.2d 430, 431 (Tenn. 1989); see also Tenn. Code Ann. § 40-7-103(a)(officers may make a warrantless arrest when they have probable cause to believe that the arrestee has committed or is committing a felony). Probable cause for an arrest without a warrant exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck, 379 U.S. at 91, 85 S.Ct. at 225; State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982). In addition, before a finding of probable cause may be based upon an informant's tip, the basis of the informant's knowledge and the informant's credibility must also be established. State v. Jacumin, 778 S.W.2d 430, 432-436 (Tenn. 1989). In this case, the officer acted in response to a informant's tip; therefore we must apply the two-pronged test to evaluate the reliability of the tip.

In the present case the informant who provided the tip about the defendant's criminal activity had assisted Officer Blackwell on a case approximately eight years earlier in which an arrest and conviction were made on a cocaine charge. Blackwell had known this informant for a number of years and said this informant had "always been very straightforward and very honest and very reliable" with him. These facts minimally satisfy the credibility prong of the Jacumin test.

However, the evidence is deficient as to the second prong of <u>Jacumin</u>. In other words, there is no evidence of the basis of the informant's knowledge, that is, how the informant knew that Bridges was at Preacher's selling cocaine. Nonetheless, where a tip fails under either or both of the two prongs, probable cause may still be established by independent police investigative work that corroborates the tip to such an extent that it supports the inference that the informant was reliable and that the informant made the charge on the basis of information obtained in a reliable way. See <u>Spinelli v. United States</u>, 393 U.S. 410, 417-18, 89 S.Ct. 584, 589-90, 21 L.Ed. 2d 637 (1969); <u>Jacumin</u>, 778 S.W.2d at 436. Here, the State argues that the tip was sufficiently corroborated to overcome any deficiency. First, the State points out that Officer Blackwell had received a half dozen prior tips that the defendant had engaged in similar illegal activity at this specific location. Second, the State argues that Blackwell knew that the defendant was a convicted drug dealer. Third, the State argues that Officer Blackwell found the defendant at Preacher's exactly as the informant had said he would be soon after Blackwell received the tip. These facts, however, are insufficient corroboration to allow an arrest under the circumstances of this case.

A police officer's knowledge of a suspect's reputation is not alone enough to constitute probable cause to arrest. <u>State v. Kimbro</u>, 496 A. 2d 498, 505 (Conn. 1985). "Something more substantial than a casual rumor . . . or an accusation based merely on an individual's general reputation" should be shown. <u>Spinelli</u>, 389 U.S. at 416, 89 S.Ct. at 589. In the present case, the only fact given by the informant corroborated by police investigation, other than defendant's reputation, was that the defendant was present at Preacher's place. While this fact may

indicate that the basis of the informant's knowledge was eyewitness observation, this corroboration is insufficient to establish the reliability of the informant's tip and therefore, probable cause.

The State has failed to establish that the information possessed by Officer Blackwell at the time he confronted the defendant was sufficient to establish probable cause for a warrantless arrest of the defendant; therefore, the ensuing search of the defendant's person cannot be validated as a search incident to a lawful arrest as the State argues. We must next determine whether the initial detention and frisk was valid under Terry.

## REASONABLE SUSPICION

It is well-established that a police officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21, 88 S.Ct. at 1880; Yeargan, __ S.W.2d at __; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). Likewise, a frisk is warranted under Terry if the police officer has a reasonable suspicion based on specific and articulable facts that the suspect is armed. Id., 392 U.S. at 27, 88 S.Ct. at 1883.

As the United States Supreme Court recognized in Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed. 2d 301 (1990):

> [r]easonable suspicion is a less demanding standard
> than probable cause not only in the sense that
> reasonable suspicion can be established with

information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is <u>less reliable</u> than that required to show probable cause.

(Emphasis added.)

In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. <u>United States v. Cortez</u>, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed. 2d 621, 629 (1981). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. <u>Id.</u>, 449 U.S. at 418, 101 S.Ct. at 694, 66 L.Ed. 2d at 629. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. <u>Terry</u>, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906.

<u>Watkins</u>, 827 S.W.2d at 294.

In this case, the officer's decision to initiate an investigatory stop and frisk of the defendant was based upon 1) information obtained from a confidential informant who had provided reliable information in the past, 2) "half a dozen or so" other tips regarding Bridges dealing drugs in the same area, and 3) the officer's own observation of Bridges at the location which had been designated by the informant only thirty minutes earlier. The informant's tip did not strictly satisfy the basis of knowledge portion of the two-prong test of reliability under <u>Jacumin</u>, 778 S.W.2d at 436, and was insufficient to support a finding of probable cause. However, the tip, in conjunction with Officer Blackwell's independent corroboration, was sufficiently reliable to provide reasonable suspicion.

An investigative stop may be based on the tip of an informant if the information manifests "enough indicia of reliability" to justify the stop. State v. Pully, 863 S.W.2d 29, 31 (Tenn. 1993); Adams v. Williams, 407 U.S. 143, 146-147, 92 S.Ct. 1921, 1923-1924, 32 L.Ed. 2d 612 (1972). When an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first hand and thus reliable. Pully, 863 S.W.2d at 32. Furthermore, a hurried description from a source who insists on immediate action suggesting the source is an eyewitness is sufficient for further investigation. Lawson v. United States, 360 A.2d 38, 40 (D.C. App. 1976). In the present case Officer Blackwell was told by the informant that the defendant was at "Preacher's" selling "crack cocaine right then," and that Bridges was carrying the drug on his person. Very soon after receiving the tip, Officer Blackwell found the defendant at "Preacher's," where the informant had told him the defendant would be. Officer Blackwell previously had received tips from other persons indicating that Bridges routinely sold crack cocaine in that area. The corroboration of the tip, indicating an eye-witness basis of knowledge, and the informant's demonstrated past credibility are sufficient to satisfy the two-pronged test of reliability. In addition, these "specific and articulable facts" are sufficient to support a finding of reasonable suspicion justifying the investigatory stop under Terry.

Once a valid stop has been made, police may pat a suspect's outer clothing if the police have a reasonable, particularized suspicion that the suspect is armed. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Hughes v. State, 588 S.W.2d 296, 304 (Tenn. 1979). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."

<u>Adams</u>, 407 U.S. at 146, 92 S.Ct. at 1923. Officer Blackwell knew that Bridges was a convicted felon and drug dealer who had recently been charged with a violent offense involving a weapon. In addition, Officer Blackwell was familiar with the defendant's armed attempt to flee police. This knowledge provided a reasonable, particularized suspicion that the defendant was armed and dangerous. For the protection of himself and others in the area, therefore, Officer Blackwell was entitled to conduct a carefully limited search of the outer clothing of the defendant in an attempt to discover weapons that might be used to assault him. See <u>Terry</u>, 392 U.S. at 30, 88 S.Ct. at 1884-1885. Accordingly, a majority of this Court holds that the "stop and frisk" of Bridges was justified under <u>Terry</u>. Having so determined, we must next consider the legality of the seizure of the pill bottle containing cocaine.

**PLAIN FEEL DOCTRINE**

In <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed. 2d 334 (1993), the United States Supreme Court held that if an officer detects contraband through the sense of touch during a valid <u>Terry</u> frisk, the officer may seize the contraband. In that case, two police officers observed Dickerson leaving an apartment building known to be a "notorious 'crack house.'" As a result of Dickerson's suspicious behavior when he saw the officers observing him, and the community reputation of the building as a haven for cocaine traffic, the officers stopped him and conducted a patdown search. During the search, one of the officers felt a small lump in the front pocket of Dickerson's jacket. After further manipulation of the lump, the officer decided it was a "lump of crack cocaine in

-12-

cellophane." The officer then removed from Dickerson's pocket a small plastic bag containing one fifth of one gram of crack cocaine. Dickerson was arrested and charged with possession of a controlled substance. Before trial, he moved to suppress the cocaine. Upon the trial court's denial of his motion, Dickerson was convicted of possession of a controlled substance. However, the conviction was overturned upon the conclusion of the Minnesota Court of Appeals and Supreme Court that the cocaine should have been suppressed. The United States Supreme Court granted certiorari review and affirmed the decision of the Minnesota Supreme Court.

Although concluding that the evidence should have been suppressed, the United States Supreme Court held that contraband detected through the sense of touch during a valid patdown search may be admitted into evidence. In enunciating the "plain feel" doctrine, the Court analogized to the "plain view" doctrine. Specifically, the Court in <u>Dickerson</u> held that

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

<u>Id</u>., 508 U.S. at ___, 113 S.Ct. at 2137 (footnote omitted).

In rejecting the contention that "plain feel" is not comparable to "plain view" because the sense of touch is inherently less reliable than the sense of sight, the Court stated:

> The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.

508 U.S. at ___, 113 S.Ct. at 2137 (emphasis added).

Based upon the facts of Dickerson, the Court identified the dispositive question, as "whether the officer who conducted the search was acting within the lawful bounds marked by Terry at the time he gained probable cause to believe the lump in respondent's jacket was contraband." 508 U.S. at ___, 113 S.Ct. at 2138. Finding that the police officer overstepped the bounds of a search for weapons authorized by Terry, the Court stated:

> Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to '[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby." It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize, and that we have condemned in subsequent cases.

Id., 508 U.S. at ___, 113 S.Ct. at 2139 (internal citations omitted).

Based upon the decision in Dickerson then, seizure of contraband under the "plain feel" doctrine is appropriate if 1) a prior valid reason exists for the intrusion, i.e., the patdown must be permissible under Terry; 2) the contraband is

detected while the Terry search for weapons legitimately is still in progress; and, 3) the incriminating nature of the object perceived by the officer's sense of touch is immediately apparent giving the officer probable cause to believe the object is contraband prior to its seizure. Dickerson, 508 U.S. at ___, 113 S.Ct. at 2137; See also Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed. 2d 347 (1987); Texas v. Brown, 460 U.S. 730, 741-742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983); State v. Jones, 653 A.2d 1040, 1047-1050 (Md. App. 1995); see generally 3 LaFave, Search & Seizure §7.5(b) (3d ed. 1996).

Clearly the first two prerequisites are met in this case. For the reasons previously stated the patdown was permissible under Terry. In addition, nothing in this record indicates that the officer exceeded the scope of a valid Terry search for weapons in his patdown of the defendant's person when he detected the bottle. Compare Minnesota v. Dickerson, supra; State v. Wonders, 929 P.2d 792 (Kan. App. 1996)(officer continued pat down of defendant's pocket after he determined that it did not contain a weapon).

Legality of the seizure in this case turns on the third prerequisite. The dispositive issue is whether Officer Blackwell's tactile perception of the pill bottle gave him probable cause to believe the object he felt was contraband before he seized it. Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband. Brown, 460 U.S. at 742, 103 S.Ct. at 1543. Probable cause "does not demand any showing that such a belief be correct or more likely true than false." Id. In determining whether probable cause

-15-

exists, courts must consider the totality of the circumstances including the officer's testimony and factual knowledge based upon prior law enforcement experience. See State v. Rushing, 935 S.W.2d 30, 33 (Mo.banc. 1996); see also State v. Trine, 673 A.2d 1098, 1100 (Conn. 1996). Courts should not surrender their common sense assessment of the sensory capacities of human touch to an officer's assertion that he or she "immediately knew" the nature of the object touched. See e.g., Jones v. State, 682 A.2d 248, 252 (Md. 1996) ("it's not just a question of being an expert and coming in and saying the magic words"). The officer's subjective belief that the object is contraband is not sufficient unless it is objectively reasonable in light of all the circumstances known at the time of the search. Trine, 673 A.2d at 1109. An officer's testimony is a factor in determining the legality of a seizure under the plain feel doctrine, but it is not dispositive and does not end a court's inquiry. Wonders, 929 P.2d at 799.

Applying these principles to the record in this case, a majority of this Court has determined that Officer Blackwell did not have probable cause to believe that the object he felt was contraband, and that he did not have probable cause to believe that the bottle contained contraband. In an affidavit filed as an exhibit to the suppression hearing Officer Blackwell described the patdown of the defendant as follows:

> For my protection I immediately identified myself and frisked Bridges for weapons. When I touched his right jacket pocket I immediately recognized a pill bottle, in that pocket, that is used by the majority of crack dealers to hold their crack cocaine. I continued the frisk and found a knife in Bridges' back pocket. The pill bottle contained crack cocaine. I charged him and also found a small bag of crack cocaine in the same pocket.

In addition, Officer Blackwell testified at the suppression hearing, recounting the discovery of the pill bottle during the patdown as follows: "[w]hen I was frisking him I felt and immediately felt the pill bottle and knew that it was the kind that a lot of other dealers will use to keep their crack in."

While Officer Blackwell said that he "immediately recognized" the item as a pill bottle, unless he was clairvoyant, he could not have discerned the contents from merely touching the container. Such a bottle, or one resembling it by touch, may enclose legal medication, candy, pins, film or any number of other small items. Officer Blackwell's testimony does not specify the objective basis upon which he relied for identification of the container itself or its possible contents as contraband. The record contains little evidence of Officer Blackwell's experience in drug cases and no evidence as to how he connected the container with the possession of cocaine. Compare, Trine 673 A.2d at 1111-12 (officer testified as to his experience with narcotics); People v. Champion, 549 N.W.2d 849, 859 (Mich. 1996) (officer's testimony about 20 years of experience in narcotics work).

Under the proof in this record, it is evident that it was not immediately apparent to Officer Blackwell that the bottle contained contraband until it was removed from the defendant's pocket. This, however, is the very type of further manipulation forbidden by Dickerson. See United States v. Ross, 827 F.Supp. at 719 (matchbox); State v. Parker, 622 So.2d 791, 795 (La. App. 1993) (matchbox); State v. Abrams, 471 S.E.2d 716, 718 (S.C. App 1996) (Tylenol bottle); Campbell v. State, 864 S.W.2d 223, 226 (Tex. App. 1993) (film canister); Davis v. State, 829

S.W.2d 218, 220 (Tex. Crim. App. 1992) (matchbox);[3] contra Champion, 549 N.W.2d at 858-59 (pill bottle in groin); Rushing, 935 S.W.2d at 30 (cylindrical medicine bottle).

Over a quarter of a century ago, the United States Supreme Court warned that "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge, 403 U.S. at 466, 91 S.Ct. at 2038. This admonition applies equally to the plain feel doctrine. Applying the plain feel doctrine with the exacting limitations stated in Dickerson, it is clear that the warrantless seizure in this case was not constitutionally permissible.[4]

## CONCLUSION

A majority of this Court has determined that the initial stop and frisk was justified by reasonable suspicion supported by specific and articulable facts. However, a majority of this Court also concludes that the evidence preponderates against the trial court's finding that the officer had probable cause to believe the

---

[3]Compare cases where the officer actually felt the contraband itself or felt the contraband through packaging that did not conceal the contents' nature, e.g., United States v. Craft, 30 F.3d 1044, 1045 (8th Cir. 1994) (bulges of heroine packages around defendant's ankles); United States v. Hughes, 15 F.3d 798, 802 (8th Cir. 1994) ("small lumps" of crack cocaine); Trine, 673 A.2d at 1111 (rock of cocaine in pocket); People v. Mitchell, 650 N.E.2d 1014, 1024 (Ill. 1995) (piece of "rock" cocaine inside baggie); State v. Wilson, 437 S.E.2d 387, 389 (N.C. App. 1993) ("lumps" in package in breast pocket); Commonwealth v. Dorsey, 654 A.2d 1086, 1087 (Pa. Super. 1995) ("lump" in plastic bag); State v. Buchanan, 504 N.W.2d 400, 404 (Wis. App. 1993) (plastic bag containing cocaine in waistband).

[4]The defendant did not contend that the Tennessee Constitution affords greater protection against searches and seizures than does the federal constitution with regard to the plain feel doctrine. The plain feel doctrine as formulated by the United States Supreme Court in Dickerson is consistent with principles enunciated by this Court in interpreting Article I, Section 7. See e.g., State v. Roode, 643 S.W.2d 651, 653 (Tenn. 1982). Consequently, that doctrine, with its specific limitations will be applied in appropriate cases in this state.

-18-

object felt during the frisk was contraband. Consequently, the judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress is reversed. The defendant's conviction is vacated, and the charge is dismissed.

**PER CURIAM**

Drowota, J. - Separate Concurring/Dissenting Opinion

Reid, J. - Separate Concurring/Dissenting Opinion

Holder, J. - Not Participating

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

December 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff-Appellee, | ) | **Filed: December 31, 1997** |
| | ) | |
| v. | ) | HENRY CRIMINAL |
| | ) | |
| RAY ANTHONY BRIDGES, | ) | Hon. Julian P. Guinn, |
| | ) | Judge |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | No. 02S01-9606-CC-00053 |
| | ) | |

## CONCURRING/DISSENTING OPINION

I agree with the majority that the initial stop and frisk of this defendant was

constitutionally permissible under <u>Terry v. Ohio</u>, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). However, in my view, seizure of the contraband also was constitutionally permissible in accordance with the "plain feel" doctrine. Therefore, I respectfully dissent from the majority's decision and would affirm the Court of Criminal Appeals' judgment upholding the trial court's denial of the defendant's motion to suppress and his subsequent conviction.

## PLAIN FEEL DOCTRINE

While the facts of this case and the parameters of the plain feel doctrine are accurately stated in the majority opinion, I do not agree with the application of the doctrine to the facts. As the majority recognizes, legality of the seizure in this case turns on whether Officer Blackwell had probable cause to believe the object he felt was contraband before he seized it. When the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband, probable cause exists. <u>Texas v. Brown</u>, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Probable cause "does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." <u>Id</u>. The United States Supreme Court has explained the assessment of probable cause as follows.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and

> weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

Brown, 460 U.S. at 742, 103 S.Ct. at 1543, quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).  In evaluating probable cause, therefore, courts must consider the totality of the circumstances including the officer's testimony and factual knowledge based upon prior law enforcement experience.  See State v. Rushing, 935 S.W.2d 30, 33 (Mo.banc. 1996); see also State v. Trine, 673 A.2d 1098, 1100 (Conn. 1996).

Whether, under the plain feel doctrine, an officer may seize an object routinely used to package or contain drugs is an issue upon which courts have split.  Some courts hold that only contraband or evidence which is itself recognized by the officer may be seized.  See e.g., Commonwealth v. Stackfield, 651 A.2d 558, 562 (Pa. Super. 1994).  Other courts have held that objects may be seized under the plain feel doctrine if the officer has probable cause to believe that the object contains contraband.  See Trine, 673 A.2d at 1103; State v. Champion, 549 S.W.2d 849, 860 (Mich. 1996); Rushing, 935 S.W.2d at 33.  The majority adopts the second approach, but concludes that Officer Blackwell did not have probable cause to believe the item detected contained contraband.  I disagree with the majority's finding and would hold that the officer had probable cause to believe the object detected during the patdown contained contraband.

This is not a situation where an officer frisks an unknown person on the street and senses an object shaped like a pill bottle.  As the majority recognizes,

pill bottles do not always contain contraband, and may contain legal substances. However, in this case, Officer Blackwell had received information from a reliable informant that Bridges was selling crack cocaine, " and that Bridges was carrying the drug on his person." While conducting a lawful Terry frisk of the defendant, Officer Blackwell detected an object which, according to his testimony, he "immediately recognized" to be a pill bottle of the type ordinarily used by crack dealers to store their product. Though he does not explicitly say so, the implicit conclusion to be drawn from his testimony is that his recognition of the pill bottle as one ordinarily used to store illegal contraband was based upon his prior experience in drug cases.[5] Had Officer Blackwell been acting without the informant's tip that the defendant was dealing crack cocaine and was carrying the drug on his person, the seizure of the pill bottle, perhaps, would be constitutionally suspect. We do not have that case before us, however. After carefully reviewing the evidence in this record, I am of the opinion that, considering the facts and circumstances, including the tip, Officer Blackwell had sufficient information to warrant a person of reasonable caution in the belief that the item he detected contained contraband. See Champion, supra (pill bottle in groin); Rushing, supra, (Life Saver Hole candy container in front pants pocket); see also United States v. Craft, 30 F.3d 1044, 1045 (8th Cir. 1994) (bulges of heroine packages around defendant's ankles); United States v. Hughes, 15 F.3d 798, 802 (8th Cir. 1994) ("small lumps" of crack cocaine); Trine, 673 A.2d at 1111 (rock of cocaine in pocket); People v. Mitchell, 650 N.E.2d 1014, 1024 (Ill. 1995) (piece of "rock" cocaine inside baggie); State v. Wilson, 437 S.E.2d 387, 389 (N.C. App. 1993)

_____

[5]The record in this case is by no means a textbook example or a model of clarity. No implicit conclusion would have been necessary had the State, at the suppression hearing, simply asked Officer Blackwell to describe his experience in prior drug cases.

-23-

("lumps" in package in breast pocket); <u>Commonwealth v. Dorsey</u>, 654 A.2d 1086, 1087 (Pa. Super. 1995) ("lump" in plastic bag); <u>State v. Buchanan</u>, 504 N.W.2d 400, 404 (Wis. App. 1993) (plastic bag containing cocaine in waistband).

## CONCLUSION

Because I am of the opinion that seizure of the contraband was constitutionally permissible under the plain feel doctrine, I respectfully dissent from the majority decision. I would affirm the Court of Criminal Appeals' decision upholding the trial court's denial of the defendant's motion to suppress and the defendant's subsequent conviction.

_____
FRANK F. DROWOTA III,
JUSTICE

FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

**December 31, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE,                    (

        Plaintiff-Appellee,            (

                                       (

                                       ( Henry Criminal

                                       (

v.                                     ( Hon. Julian P. Guinn, Judge

                                       (

                                       ( S. Ct. No. 02S01-9606-CC-00053

RAY ANTHONY BRIDGES,                   (

                                       (

    Defendant-Appellant.               (


**CONCURRING AND DISSENTING OPINION**

This case presents for review the judgment of the Court of Criminal Appeals affirming the trial court's order which overruled the defendant's motion to suppress evidence obtained during a stop and frisk of the defendant.  The defendant pleaded guilty to one count of possession of cocaine with intent to sell.  Pursuant to Tenn. R. Crim. P. 37(b)(2), an order was entered reserving for appeal the issue of the warrantless search, determined to be dispositive of the case.  The Court of Criminal Appeals affirmed the defendant's conviction.  In reaching its decision, the court held that the seizure of evidence found on the defendant was permissible under the "plain feel" or "plain touch" doctrine expounded in Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993).  The Court granted the Rule 11 application to address the legality of the seizure and particularly the "plain feel" doctrine.

**I**

The proof at the suppression hearing shows that at 2:47 p.m. on December 23, 1993, Officer D.W. Blackwell of the Paris Police Department made a telephone call to a confidential informant who had provided reliable information in the past.  The informant told Officer Blackwell that the defendant, Ray Anthony Bridges, was selling crack cocaine "right then" at a club called "Preacher's" in the "Bottom."  Officer Blackwell testified that he had previously received "half a dozen or so" tips that the defendant was dealing in drugs in that area.  Blackwell was aware that the defendant had previously been convicted of felony assault and had been involved in

-26-

a recent armed altercation with the police. Thirty minutes after making the call, Officer Blackwell found the defendant seated at a table in Preacher's engaged in conversation. Blackwell identified himself and ordered the defendant to stand against the wall where he "patted him down" for weapons. During the pat down, Blackwell felt a small object "in the shape of a pill bottle" in the defendant's right jacket pocket and, in his words, "knew that it was the kind that a lot of other crack dealers will use to keep their crack in." Blackwell seized the bottle which upon inspection was found to contain crack cocaine. Blackwell also found a "knife," not otherwise described, in the defendant's pants pocket. The record contains no description of the pill bottle, or the characteristics thereof, round, square, large, small, soft, hard, or other. The defendant then was placed under arrest. As the result of a further search of the defendant's person, Officer Blackwell discovered a plastic bag of cocaine "in the same pocket."

## II

This case involves the review of a trial court's findings of fact and conclusions of law in disposing of a motion to suppress. In State v. Odom, 928 S.W.2d 18 (Tenn. 1996), the Court restated the standard to be applied by an appellate court when reviewing a trial court's findings of fact on suppression issues.

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the

> trial court is entitled to the strongest
> legitimate view of the evidence adduced at the
> suppression hearing as well as all reasonable
> and legitimate inferences that may be drawn from
> that evidence.  So long as the greater weight of
> the evidence supports the trial court's
> findings, those findings shall be upheld.  In
> other words, a trial court's findings of fact in
> a suppression hearing will be upheld unless the
> evidence preponderates otherwise.

Id. at 23.  However, the application of the law to the facts found by the trial court is a question of law which this Court reviews de novo. Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993).

## III

I concur in the per curiam decision that there was not probable cause to arrest the defendant.

While the primary reason for granting the application in this case was to address the ruling of the Court of Criminal Appeals on the "plain feel" doctrine, this issue cannot be reached without first addressing the challenge raised regarding the legality of Officer Blackwell's initial detention and frisk of the defendant. As is clear from the United States Supreme Court decision in Dickerson, the plain feel doctrine is an extension of the plain view doctrine and is based on the same rationale.  Minnesota v. Dickerson, 508 U.S. at _____, 113 S. Ct. at 2137.  Before an officer is authorized to seize evidence in plain view, the initial intrusion that brings the police within plain view of the evidence must be

-28-

constitutionally valid.  See Coolidge v. New Hampshire, 403 U.S.
443, 465-466, 91 S. Ct. 2022, 2037-38, 29 L. Ed. 2d 564 (1971).
Consequently, it is necessary to determine the validity of the
defendant's detention and the "pat down" of his person before
reaching the question of the seizure under the "plain feel"
doctrine.

        Officer Blackwell acted without a warrant.  The Fourth
Amendment to the United States Constitution[6] and Article I, Section
7,[7] of the Tennessee Constitution prohibit unreasonable searches and
seizures.  Warrantless searches are presumed to be unreasonable and
cannot be sustained unless they fall into one of the narrowly
defined exceptions to the warrant requirement.  State v. Yeargan,
_____ S.W.2d _____, _____ (Tenn. 1995) (Reid, J., concurring) [slip op. at
7]; State v. Bartram, 925 S.W.2d 227, 229-230 (Tenn. 1996).  The
defendant contends that no exceptions to the warrant requirement are
applicable in his case and that Officer Blackwell had no right to
detain or search him.  The State, on the other hand, argues that
Officer Blackwell had probable cause to arrest the defendant and
that the search of the defendant's person was permissible as a

---

[6]The Fourth Amendment provides that "[t]he right of the people to
be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures, shall not be violated, and no
warrants shall issue, but upon probable cause, supported by oath or
affirmation, and particularly describing the place to be searched, and
the persons or things to be seized."  The Fourth Amendment is applicable
to the states through the Fourteenth Amendment.  Mapp v. Ohio, 367 U.S.
643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081 (1961).

[7]Article I, Section 7, of the Tennessee Constitution provides
"[t]hat the people shall be secure in their persons, houses, papers and
possessions, from unreasonable searches and seizures; and that general
warrants, whereby an officer may be commanded to search suspected places,
without evidence of the fact committed, or to seize any person or persons
not named, whose offences are not particularly described and supported by
evidence, are dangerous to liberty and ought not to be granted."

search incident to an arrest, an exception to the warrant requirement.[8]  In the alternative, the State contends that the detention and search were valid as a stop and frisk under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  The Court of Criminal Appeals agreed with the State's second argument and found that the detention and search were valid under Terry.

The State's first argument must be addressed because if the Court finds that the search was incident to a lawful arrest, this exception to the warrant requirement would independently support the search of the defendant's person and the seizure of the container, and the "stop and frisk" and "plain feel" issues would be moot.[9]  See Chimel v. California, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969); State v. Marshall, 870 S.W.2d 532, 540 (Tenn. Cr. App. 1993). The Fourth Amendment and Article I, Section 7, require the existence of "probable cause" for making an arrest without a warrant.  Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142 (1964); State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S. Ct. 770, 74 L. Ed. 2d 983 (1983); see also Tenn. Code Ann. § 40-7-103(a) (officers may make a warrantless arrest when they have probable cause to believe that the arrestee has committed or is committing a

---

[8]The State did not present this argument in the Court of Criminal Appeals; however, this was the primary argument made to the trial court, which found the "arrest and frisk" of the defendant supported by "articulable facts."  The trial court made no finding concerning the application of the "plain feel" doctrine.

[9]When an arrest is made, an officer may search the person arrested in order to remove any weapons that the arrestee might try to use to resist arrest or effect an escape.  In addition, the officer may "search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."  Chimel v. California, 395 U.S. at 762-63, 89 S. Ct. at 2040.

felony). In order to have probable cause for an arrest without a warrant, at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information must be "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck, 379 U.S. at 91, 85 S. Ct. at 225; State v. Melson, 638 S.W.2d at 350.

Here, the warrantless arrest was based upon information provided by an informant. The test to determine probable cause to make the arrest is the same as that used to determine whether there is probable cause to issue a search warrant. See State v. Yeargan, _____ S.W.2d at _____ (Reid, J., concurring) [slip op. at 12]; see e.g., State v. Pully, 863 S.W.2d 29, 31 (Tenn. 1993). The officer must know that the informant is credible or his information is reliable and that the informant has a basis for the information that the person was involved in criminal conduct. State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989). In the present case, Officer Blackwell testified that the informant had provided reliable information to him in a prior illegal drug case. Blackwell also testified that he had known this informant for a number of years and that this person had "always been very straightforward and very honest and very reliable" with him. These facts may minimally satisfy the first prong of the test in Jacumin.

However, the record definitely is deficient as to the second prong of Jacumin. The informant did not tell Officer Blackwell the basis of his knowledge that the defendant was at

Preacher's selling cocaine.

> That the informant has demonstrated general reliability in the past, is . . . no index of the reliability of specific information he passes on; he may have received it from a totally unreliable source.  There being no presumption that the informant speaks with personal knowledge, the basis of knowledge test is, therefore, intended to weed out, as not of sufficient quality, data received by the informant from others who have not themselves observed facts suggestive of criminal activity. . . . Otherwise privacy and liberty may be invaded by a warrantless search or arrest based solely on the quality of the informant and not at all on the quality of the information, i.e., its suggestiveness of criminal activity.

People v. Elwell, 406 N.E.2d 471, 474-475 (N.Y. 1980) (citations omitted).

Nonetheless, where a tip fails under either or both of the two prongs, probable cause may still be established by independent police investigative work that corroborates the tip to such an extent that it supports the inference that the informant was reliable and that the informant made the charge on the basis of information obtained in a reliable way.  See Spinelli v. United States, 393 U.S. 410, 417-18, 89 S. Ct. 584, 589-90, 21 L. Ed. 2d 637 (1969); Jacumin, 778 S.W.2d at 436.  Here, the State argues that three pieces of information independently corroborated the tip enough to overcome any deficiency.  First, the State points out that Blackwell received a half dozen prior tips that the defendant had engaged in similar illegal activity at this location.  Second, the State argues that Blackwell knew that the defendant was a convicted

drug dealer.  Third, the State argues that Officer Blackwell found the defendant at Preacher's soon after he received the tip.  These facts are insufficient corroboration to justify an arrest of the defendant.

A basis of knowledge cannot be inferred from the corroboration of facts related only to innocent activity or matters open and obvious to anyone.  See State v. Kimbro, 496 A.2d 498 (Conn. 1985); State v. Raheem, 464 So. 2d 293, 297 (La. 1985); State v. Ruffin, 448 So. 2d 1274, 1278 (La. 1984); People v. Elwell, 406 N.E.2d at 475.  Likewise, a police officer's knowledge of a suspect's reputation is not enough to constitute probable cause to arrest.  State v. Kimbro, 496 A. 2d at 505.  "Something more substantial than a casual rumor . . . or an accusation based merely on an individual's general reputation" must be shown.  Spinelli v. United States, 389 U.S. at 416, 89 S. Ct. at 589.  In the present case, the only fact given by the informant and corroborated by police investigation, other than defendant's reputation, was that the defendant was present at Preacher's place.  This fact does not indicate that the defendant was engaging in any illegal activity that would furnish probable cause for an arrest; nor does this fact "permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed."  United States v. Spinelli, 393 U.S. at 418, 89 S. Ct. at 590.

The information possessed by Officer Blackwell at the time he confronted the defendant was insufficient to establish probable cause for a warrantless arrest of the defendant; therefore, the

search of the defendant's person cannot be validated as a search incident to a lawful arrest.

**IV**

I dissent from the <u>per</u> <u>curiam</u> opinion finding that the apprehension of the defendant was a valid investigative stop.

Probable cause is not the only basis on which a person may be detained by a police officer without a warrant. If the facts and circumstances do not warrant the reasonable belief that a crime has been or is being committed and, therefore, there is not probable cause for arrest, those facts and circumstances may be examined to determine if they permit an investigative stop. This Court has previously reviewed decisions in which the requirements for probable cause and for investigative stops were discussed and noted the distinction between the two principles. The distinction between an arrest and an investigative stop is stated in <u>State v. Pully</u>, 863 S.W.2d 29, 30 (Tenn. 1993):

> In general, although the Fourth Amendment requires "probable cause" before an arrest is deemed to be reasonable, the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy.

Consequently, under exigent circumstances, a police officer may make an investigative stop when the officer has a reasonable suspicion,

-34-

supported by specific and articulable facts, that a criminal offense has been or is about to be committed.  Id.

Recognition that an investigative stop may be constitutionally reasonable even though an arrest would not be constitutionally reasonable was not intended to be a relaxation of constitutional protection against intrusions by the state.  Instead, it is a recognition that a limited intrusion under exigent circumstances may be justified as constitutionally reasonable. State v. Yeargan, _____ S.W.2d at _____ (Reid, J., concurring) [slip op. at 9].  Two essential conditions characterize a valid investigative stop, exigent circumstances and limited intrusion. After reviewing decisions from other jurisdictions in which investigative stops were found to be justified, the Court in Pully stated:  "These cases show that the gravity of the perceived harm is a crucial element in assessing the reasonableness of an investigative Terry stop."  State v. Pully, 863 S.W.2d at 33.  The Court then approved this statement from a concurring opinion in United States v. Mendenhall , 446 U.S. 544, 561, 100 S. Ct. 1870, 1881, 64 L. Ed. 2d 497 (1980) (Powell, J., concurring):

> The reasonableness of a stop turns on the facts
> and circumstances of each case.  In particular,
> the Court has emphasized (i) the public interest
> served by the seizure, (ii) the nature and scope
> of the intrusion, and (iii) the objective facts
> upon which the law enforcement officer relied in
> light of his knowledge and experience.

State v. Pully, 863 S.W.2d at 34.

Reasonable suspicion may justify a limited intrusion into the defendant's security where the circumstances require immediate action by the police officer.  The United States Supreme Court stated in Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990), that,

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

While the informant's tip and Officer Blackwell's own knowledge and investigation are not sufficient to support a finding of probable cause under Jacumin, they may be sufficient to provide that reasonable suspicion which is one requirement for an investigative stop.  Reasonable suspicion may be based on the tip of a known informant; when the informer gives the officer information "immediately verifiable at the scene," "the information may carry 'enough indicia of reliability'" to justify the stop where there is "an immediate threat of danger."  State v. Pully, 863 S.W.2d at 31 (quoting Adams v. Williams, 407 U.S. 143, 146-147, 92 S. Ct. 1921, 1923-1924, 32 L. Ed. 2d 612 (1972)).  The test adopted by Jacumin is helpful in determining whether "specific and articulable facts" justify the reasonable suspicion necessary for an investigative stop.  Id. at 32.  For example, under a reasonable suspicion analysis, when an informant reports an incident at or near the time of its occurrence, a court often can assume that the report is first

hand and thus reliable. Id. Furthermore, a hurried description from a source who insists on immediate action suggests that the source is an eyewitness and may be sufficient cause for further investigation. Id.

In the present case, Officer Blackwell was told by the informant that the defendant was at "Preacher's" selling "crack cocaine right then." Soon after receiving the tip, Officer Blackwell found the defendant at "Preacher's," where the informant had told him the defendant would be. If there was "the need for immediate police action in response to serious threats of harm," the informant's tip would justify an investigative stop. Id. at 33. However, the informant did not report that the defendant was armed, though the officer had reason to suspect he might be, nor did the informant report that the defendant intended to do anything that would create an immediate danger. The record shows that the defendant was seated at a table in a public place engaged in conversation. Despite prior incidents of violent conduct and even though the officer suspected the defendant was in possession of illegal drugs, the defendant was not at the time Officer Blackwell entered the club engaged in any suspicious behavior or unusual conduct which required or justified his immediate detention. The evidence, considered in the light most favorable to the prosecution, does not show that Officer Blackwell had specific and articulable facts or inferences from facts sufficient to generate a reasonable conclusion that a crime had been, was, or was about to be committed. And, further, the suspected criminal activity in this case, possession of illegal drugs, is different in principle from the

suspected armed robbery in <u>Terry</u> and the aggravated assault or murder anticipated in <u>Pully</u>. The criminal activity suspected did not constitute an immediate threat of harm to the officer or others. There was no need for immediate police action. Consequently, the initial detention of the defendant was not justified.

Where the investigative detention is justified, the police officer may pat a suspect's outer clothing if the officer has a reasonable, particularized suspicion that the suspect is armed. <u>Terry v. Ohio</u>, 392 U.S. at 27, 88 S. Ct. at 1883; <u>Hughes v. State</u>, 588 S.W.2d 296, 304 (Tenn. 1979). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." <u>Adams v. Williams</u>, 407 U.S. at 146, 92 S. Ct. at 1923. Officer Blackwell knew that the defendant was a convicted felon and drug dealer. He knew that the defendant had recently been charged with a violent offense involving a weapon and was familiar with the defendant's armed attempt to flee police. Even though the defendant was not in fact armed, this knowledge provided a reasonable, particularized suspicion that the defendant was armed and dangerous. However, this particularized suspicion cannot be the basis for the initial stop.

> A valid investigatory stop must be justified at
> its inception and must be reasonably related in
> scope to the circumstances that justified
> interference by the police with a person's
> security. Justification must be based on an
> objective manifestation that the person stopped
> was or was about to be engaged in criminal
> activity as judged by those versed in the field
> of law enforcement when viewed under the

totality of the circumstances. The detaining officer must have had a particularized and objective basis for the suspicion of criminal activity.

People v. Champion, 549 N.W.2d 849, 853 (Mich. 1996) (citations omitted).

The State at a suppression hearing has the burden of showing by a preponderance of the evidence that the search was conducted within a recognized exception to the warrant requirement. State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). The State has failed to carry that burden in the present case.

The conclusion is that since there was no valid basis for Officer Blackwell's initial detention of the defendant and, consequently, there was no authority for the search which produced the contraband, the trial court erred in not suppressing the evidence.

V

I concur in the per curiam decision that even if the detention of the defendant was lawful, the evidence is not admissible under the "plain feel" doctrine. The Court of Criminal Appeals, after finding the initial detention was valid under Terry, upheld the seizure under the "plain feel" doctrine of Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130 (1993). In that case the United States Supreme Court held that if, within the confines of a

valid <u>Terry</u> frisk, an officer detects contraband through the sense of touch, the officer may seize the contraband. Having found the detention was not a valid <u>Terry</u> stop, the "plain feel" issue is moot in this case. However, since the Rule 11 application was granted for the purpose of discussing that issue, its consideration is not inappropriate.

In <u>Dickerson</u>, two police officers observed Dickerson leaving an apartment building known to be a "notorious 'crack house.'" Based on Dickerson's suspicious behavior when he saw the officers looking at him and the fact that he had left a building associated with cocaine traffic, the officers stopped him and conducted a patdown search, during which one of the officers felt a small lump in the front pocket of Dickerson's jacket.[10] The officer manipulated the lump with his fingers and thought that it felt like "a lump of crack cocaine in cellophane." The officer then reached into the pocket and retrieved a small plastic bag containing one fifth of one gram of crack cocaine. Dickerson was arrested and charged with possession of a controlled substance. Before trial, he moved to suppress the cocaine. The trial court denied his motion and he was convicted of possession of a controlled substance. The Minnesota Court of Appeals and the Minnesota Supreme Court, however, held that the cocaine should have been suppressed. The State appealed to the United States Supreme Court, which affirmed the

---

[10]The validity of the initial detention in <u>Dickerson</u> was not contested. However, Justice Scalia stated, "My problem with the present case is that I am not entirely sure that the physical search-the "frisk"- that produced the evidence at issue here complied with [the] constitutional standard." <u>Dickerson</u>, 508 U.S. at _____, 113 S. Ct. at 2139 (J. Scalia, concurring).

Minnesota Supreme Court.

Although concluding that the evidence should have been suppressed, the United States Supreme Court held that contraband detected through the sense of touch during a pat down search may be admitted into evidence. It based its decision adopting the so-called "plain feel" doctrine upon an analogy to the "plain view" doctrine.

> The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment--or at least no search independent of the initial intrusion that gave the officers their vantage point. See Illinois v. Andreas, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324, 77 L. Ed. 2d 1003 (1983); Texas v. Brown, [460 U.S. 730, 740, 103 S. Ct. 1535, 1542, 75 L. Ed. 2d 502 (1983)]. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. See [Arizona v. Hicks, 480 U.S. 321, 326-327, 107 S. Ct. 1149, 1153, 94 L. Ed. 2d 347 (1987)]; Coolidge v. New Hampshire, 403 U.S. 443, 467-468, 469-470, 91 S. Ct. 2022, 2028-2029, 2040, 29 L. Ed. 2d 564 (1971)(opinion of Stewart, J.)]. The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

Id. at ____, 113 S. Ct. at 2137 (emphasis added) (footnote omitted).

In Dickerson, the United States Supreme Court rejected two arguments against the plain feel doctrine. One was that touch is more intrusive of one's privacy than is sight. The Court responded that this argument was "inapposite in light of the fact that the intrusion . . . has already been authorized by the lawful search for weapons." Id., 508 U.S. at ____, 113 S. Ct. at 2138. A second argument against the plain feel doctrine was that the sense of touch is inherently less immediate and less reliable than the sense of sight. In response, the Court stated that Terry itself demonstrated that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure.

> The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.

Id. at ____, 113 S. Ct. at 2137 (emphasis added).

The Court then proceeded to apply the principles of the plain view doctrine to the facts of Dickerson. The dispositive question, the Court wrote, "is whether the officer who conducted the

-42-

search was acting within the lawful bounds marked by Terry at the time he gained probable cause to believe that the lump in respondent's jacket was contraband." Id. at ____, 113 S. Ct. at 2138. The Court found that the officer in Dickerson "overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under Terry." Id.

> Where, as here, "an officer who is executing a
> valid search for one item seizes a different
> item," this Court rightly "has been sensitive to
> the danger . . . that officers will enlarge a
> specific authorization, furnished by a warrant
> or an exigency, into the equivalent of a general
> warrant to rummage and seize at will." Texas v.
> Brown, 460 U.S., at 748, 103 S. Ct., at 1546-
> 1547 (Stevens, J., concurring in judgment).
> Here, the officer's continued exploration of
> respondent's pocket after having concluded that
> it contained no weapon was unrelated to "[t]he
> sole justification of the search [under Terry:]
> . . . the protection of the police officer and
> others nearby." 392 U.S., at 29, 88 S. Ct., at
> 1884. It therefore amounted to the sort of
> evidentiary search that Terry expressly refused
> to authorize, see id., at 26, 88 S. Ct., at
> 1882, and that we have condemned in subsequent
> cases. See Michigan v. Long, 463 U.S. [1032,
> 1049, n. 14, 103 S. Ct. 3269, 3480-3481, 77 L.
> Ed. 2d 1201 (1983)]; Sibron [v. New York, 392
> U.S. 40, 65-66, 88 S. Ct. 1889, 1904, 20 L. Ed.
> 2d 917 (1968)].

Id. at ___, 113 S. Ct. at 2138-39.

Two prerequisites can be gathered from Dickerson for allowing the seizure of contraband detected through a police officer's sense of touch during a protective pat down search of a suspect. First, the scope of the search must be limited to that necessary to determine if the suspect is armed. Second, the

incriminating character of the non-threatening contraband detected during the limited search must be "immediately apparent." United State v. Ross, 827 F. Supp. 711, 718 (S.D. Ala. 1993), aff'd, 19 F.3d 1446 (11th Cir. 1994); D.D. v. State, 668 N.E.2d 1250, 1252 (Ind. App. 1996). In the instant case, assuming that the initial seizure was justified, the first of these prerequisites is initially met. Nothing in the record indicates that the officer went beyond the boundaries of a Terry search for weapons in his patdown of the defendant's person until he seized the bottle. Compare Dickerson, 508 U.S. at _____, 113 S. Ct. at 2138; State v. Wonders, 929 P.2d 792 (Kan. App. 1996) (officer continued pat down of defendant's pocket after he determined that it did not contain a weapon). It is the latter of these two prerequisites that fails in the present case.

To justify seizure of the pill bottle, its identity as contraband must have been "immediately apparent." The term "immediately apparent" has been used synonymously with "probable cause." As the United States Supreme Court wrote in Dickerson itself, "[i]f . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object--i.e., if 'its incriminating character [is not] "immediately apparent,"'--the plain-view doctrine cannot justify its seizure." Id, 508 U.S. at ____, 113 S. Ct. at 2137 (citations omitted). See also Arizona v. Hicks, 480 U.S. at 329, 107 S. Ct. at 1154; Texas v. Brown, 460 U.S. at 741-742, 103 S. Ct. at 1543 (1983); State v. Jones, 653 A.2d 1040, 1047-1050 (Md. App. 1995); see generally 3 Wayne R. LaFave, Search & Seizure § 7.5(b)

(3d ed. 1996). The question thus becomes whether Officer

Blackwell's tactile perception of the pill bottle gave him, without

further searching, probable cause to believe the object felt was

contraband.

An affidavit filed as an exhibit to the suppression

hearing gives the following account of Officer Blackwell's pat down

of the defendant:

> For my protection I immediately identified
> myself and frisked Bridges for weapons. <u>When I
> touched his right jacket pocket I immediately
> recognized a pill bottle, in that pocket, that
> is used by the majority of crack dealers to hold
> their crack cocaine.</u>  I continued the frisk and
> found a knife in Bridges' back pocket.  The pill
> bottle contained crack cocaine.  I charged him
> and also found a small bag of crack cocaine in
> the same pocket.

Officer Blackwell also testified at the suppression hearing

regarding his discovery of the bottle:

> Q.  All right; what actually did you take into
> possession regarding controlled substances?
>
> A.  Took crack cocaine which was in an amount--
>
> Q.  Well, you don't have to give me the amount.
> Where was it located on the defendant?
>
> A.  It was in his right jacket pocket.
>
> Q.  In what kind of container?
>
> A.  Part of it was in a plastic bag, part of it
> was in a pill bottle.  That's when I seized it.
> <u>When I was frisking him I felt and immediately
> felt the pill bottle and knew that it was the
> kind that a lot of other dealers will use to
> keep their crack in.</u>

In summary, the evidence shows that Officer Blackwell felt an object that he immediately recognized as a pill bottle when he touched the defendant's jacket in the course of the <u>Terry</u> weapons frisk.

The courts must carefully scrutinize seizures supported by the plain feel doctrine.  As the United States Supreme Court acknowledged in <u>Dickerson</u>, 508 U.S. \_\_\_\_, 113 S. Ct. at 2137, to the extent that the sense of touch may be less reliable in certain circumstances, officers will  less often be able to justify seizures of unseen contraband.  Courts should not surrender their common sense assessment of the sensory capacities of human touch to an officer's assertion that he or she "immediately knew" the nature of the object touched.  <u>See</u>, <u>e.g.</u>, <u>Jones v. State</u>, 682 A.2d 248, 252 (Md. 1996) ("it's not just a question of being an expert and coming in and saying the magic words").  The officer's subjective belief that the object is contraband is not sufficient unless it is objectively reasonable in light of all the circumstances known at the time of the search.  <u>State v. Trine</u>, 673 A.2d 1098, 1109 (Conn. 1996).  An officer's testimony is a factor in determining the legality of a seizure under the plain feel doctrine, but it is not dispositive and does not end a court's inquiry.  <u>State v. Wonders</u>, 929 P.2d at 799.

Practical and constitutional concerns require that the plain feel doctrine be applied with caution.  The doctrine has been criticized since it may easily allow

a law officer to seize anything as long as he is able to contend that he could identify the contraband by merely touching the suspect's clothing. Realistically, no matter how absurd or unsupportable such a contention may be, a defendant will not be able to successfully challenge it. The "plain touch" doctrine will encourage officers to investigate any lump or bulge in a person's clothing or pockets that arouses their curiosity during the course of a patdown search. If the item turns out to be contraband, then its seizure can be retrospectively justified. If it turns out to be something else, then there is no case and the matter ends there. In the interim, a citizen is subject to an unwarranted intrusion into his personal privacy far beyond the intrusion contemplated by the weapons patdown search.

People v. Mitchell, 650 N.E.2d 1014, 1025 (Ill. 1995) (Heiple, J., dissenting). Over a quarter of a century ago, the United States Supreme Court similarly warned that "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge v. New Hampshire, 403 U.S. at 466, 91 S. Ct. at 2038. This admonition applies equally to the plain feel doctrine, which, if loosely applied, could, as its critics predict, expand limited protective searches for weapons under Terry into general exploratory rummagings of suspects' persons for contraband. See Barbara A. Doty, Note, Minnesota v. Dickerson: Plain Touch Doctrine-- Authorizing a Terry Stop and Search for Drugs?, 1994 Wis. L. Rev. 1303 (1994).

The defendant did not contend that the Tennessee Constitution affords greater protection against searches and seizures than does the federal constitution with regard to the plain

-47-

feel doctrine. The plain feel doctrine as formulated by the United States Supreme Court in <u>Dickerson</u> is not inconsistent with principles enunciated by this Court in interpreting Article I, Section 7. <u>See</u> <u>e.g.</u>, <u>State v. Roode</u>, 643 S.W.2d 651, 653 (Tenn. 1982). Consequently, that doctrine, with the exacting limitations stated in <u>Dickerson</u>, will be applied in appropriate cases in this state.

However, the application of these principles to the record in this case requires the finding that Officer Blackwell did not have probable cause to believe that the object he felt was contraband. Based on his testimony, he had a suspicion that the bottle contained contraband, but even a reasonable suspicion is insufficient to support a seizure under the plain view doctrine, <u>Arizona v. Hicks</u>, 480 U.S. at 326-27, 107 S. Ct. at 1153, and thus, by analogy, it is insufficient to support a seizure under the "plain feel" doctrine. While Officer Blackwell testified that he "immediately recognized" the item as a pill bottle, unless he was clairvoyant the contents could not be determined from merely touching the container. Such a bottle, or one resembling it by touch, may enclose legal medication, candy, pins, film or any number of other small items. Nothing in the officer's testimony offers an objective basis for identification of the container itself or its possible contents as contraband. Nothing in the record explains how his touching the container revealed its contents "so unquestionably" that no warrant requirement existed "merely because there is a container between the officer and the seizable object." 3 LaFave, <u>Search & Seizure</u> § 5.5(f). Although the Court of Criminal Appeals writes that Officer Blackwell's identification was based upon his

-48-

experience, the record contains little evidence of Officer Blackwell's experience in drug cases and no evidence as to how he connected the container with the possession of cocaine. Compare, State v. Trine, 673 A.2d at 1111-12 (officer testified as to his experience with narcotics); People v. Champion, 549 N.W.2d. 849, 859 (Mich. 1996) (officer's testimony about 20 years of experience in narcotics work). Under the proof in this record, it is evident that it was not apparent to Officer Blackwell that the bottle contained contraband until it was removed from the defendant's pocket. This, however, is the very type of further manipulation forbidden by Dickerson. See United States v. Ross, 827 F. Supp. at 719 (matchbox); State v. Parker, 622 So. 2d 791, 795 (La. App. 1993) (matchbox); State v. Abrams, 471 S.E.2d 716, 718 (S.C. App. 1996) (Tylenol bottle); Campbell v. State, 864 S.W.2d 223, 226 (Tex. App. 1993) (film canister); Davis v. State, 829 S.W.2d 218, 220 (Tex. Cr. App. 1992) (matchbox);[11] contra People v. Champion, 549 N.W.2d at 858-59 (pill bottle in groin); State v. Rushing, 935 S.W.2d 30 (Mo. 1996) (en banc) (cylindrical medicine bottle).

**VI**

---

[11]Compare cases where the officer actually felt the contraband itself or felt the contraband through packaging that did not conceal the contents' nature, e.g., United State v. Craft, 30 F.3d 1044, 1045 (8th Cir. 1994) (bulges of heroine packages around defendant's ankles); United States v. Hughes, 15 F.3d 798, 802 (8th Cir. 1994) ("small lumps" of crack cocaine); State v. Trine, 673 A.2d at 1111 (rock of cocaine in pocket); People v. Mitchell, 650 N.E.2d 1014, 1024 (Ill. 1995)(piece of "rock" cocaine inside baggie); State v. Wilson, 437 S.E.2d 387, 389 (N.C. App. 1993) ("lumps" in package in breast pocket); Commonwealth v. Dorsey, 654 A.2d 1086, 1087 (Pa. Super. 1995) ("lump" in plastic bag); State v. Buchanan, 504 N.W.2d 400, 404 (Wis. App. 1993) (plastic bag containing cocaine in waistband).

In conclusion, I would hold that the defendant's initial detention was not a valid <u>Terry</u> stop and, further, because the search cannot be sustained under the "plain feel" doctrine, the search was not reasonable under the Fourth Amendment and Article I, Section 7.

_____

Reid, J.