STATE OF NORTH CAROLINA v. ANTONIO DEMETRIUS WILSON, Defendant

No. 9326SC46

(Filed 7 December 1993)

1. **Searches and Seizures § 82 (NCI4th)— warrantless search and seizure of defendant—reasonable suspicion by police officer—pat-down search proper**

    An officer had reasonable suspicion to seize defendant and to perform a pat-down search where the officer was in the area because police had received an anonymous phone call that individuals were dealing drugs at an apartment complex; the police were familiar with the area and knew that when a squad car entered the parking lot at one end of the breezeway, the suspects would run out the other end; when the officer's squad car pulled into the parking lot, defendant and several other individuals attempted to flee the scene; and the officer testified that as a seven-year veteran of the force, it was his experience that weapons were frequently involved in drug transactions.

    **Am Jur 2d, Searches and Seizures §§ 42, 43.**

2. **Searches and Seizures § 58 (NCI4th)— pat-down search— contraband felt—"plain feel" doctrine—nature of contraband immediately apparent to officer**

    An officer's search of defendant was no more intrusive than was necessary to assure himself that defendant was not dangerous where the officer was called to the scene to investigate alleged drug dealings; the officer had made prior drug arrests in his seven years of service; the officer was in the midst of a weapons search when he felt the contraband; upon using his tactile senses, the officer had probable cause to believe that the contraband in defendant's pocket was co-

caine; and the character of the substance was immediately apparent to the officer.

**Am Jur 2d, Searches and Seizures §§ 88, 103.**

Appeal by defendant from order entered in open court on 3 August 1992 by Judge Marcus Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 October 1993.

*Attorney General Michael F. Easley, by Associate Attorney General E. Lee Turner, Jr., for the State.*

*Harold J. Bender, for defendant-appellant.*

LEWIS, Judge.

The evidence presented below shows that on the evening of 2 March 1991, the Charlotte Police Department received an anonymous phone call that several individuals were dealing drugs in the breezeway of Building 1304 at the Hunter Oaks Apartments. The caller provided no specifics as to the names of the individuals nor did the caller give a description of the alleged drug dealers. Officer Faulkenberry and Officer J.M. Cherry were originally dispatched to the scene. The police were familiar with the area and knew that when a squad car entered the parking lot at one end of the breezeway the suspects would run out the other end. A plan was thus devised where one patrol car would enter the parking lot and Officer Faulkenberry and Officer Cherry would position themselves so that they could apprehend anyone who ran out the back of the breezeway.

One of the suspects who ran out the back of the breezeway was defendant. Officer Faulkenberry stopped him and performed a protective frisk of defendant's outer clothing. While performing his protective frisk, Officer Faulkenberry felt a lump in the left breast pocket of defendant's jacket and he immediately opined that it was crack cocaine. Officer Faulkenberry then asked defendant if his coat had an inside pocket. Defendant made no verbal response, but instead opened his jacket so that the inside pocket was visible. Officer Faulkenberry testified that once defendant opened his jacket he saw a small plastic bag which he then removed. The contents of the plastic bag proved to be crack cocaine.

Defendant was arrested and charged with possession with intent to sell and deliver cocaine. At trial defendant filed a motion

to suppress and an accompanying affidavit giving his version of Officer Faulkenberry's search. The trial court denied defendant's motion to suppress and defendant thereafter entered a plea of guilty. Defendant now appeals.

[1] There are two separate issues before this Court: (I) Whether Officer Faulkenberry had a reasonable suspicion to justify his stop of defendant, and (II) Whether Officer Faulkenberry's frisk of defendant was more intrusive than necessary. As to the first issue defendant argues that the facts of this case are identical to those in *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992), where this Court held that reasonable suspicion did not exist. We do not agree. In *Fleming* this Court stated that: "A brief investigative stop of an individual must be based on specific and articulable facts as well as inferences from those facts, viewing the circumstances surrounding the seizure through the eyes of a reasonable cautious police officer on the scene, guided by his experience and training." *Id.* at 169, 415 S.E.2d at 785 (citations omitted). This Court further held that there was no reasonable suspicion because the officers seized a defendant who had merely been standing in an open area between two apartment buildings and then chose to walk in a direction away from the officers. The *Fleming* Court determined that the officers had only a generalized suspicion based on the time, place and the fact that defendant was unfamiliar to the area, and that if a generalized suspicion was enough then innocent citizens could be subjected to unreasonable searches at an officer's whim. *Id.* at 171, 415 S.E.2d at 785-86.

In the present case we find that Officer Faulkenberry had much more than a generalized suspicion. Officer Faulkenberry was in the area because the police had received an anonymous phone call that individuals were dealing drugs at the apartment complex. Further, when the squad car pulled into the parking lot, defendant and several other individuals attempted to flee the scene. Officer Faulkenberry also testified that as a seven year veteran of the force, it was his experience that weapons were frequently involved in drug transactions. We find that when these factors are considered as a whole and from the point of view of a reasonably cautious officer present on the scene, Officer Faulkenberry had reasonable suspicion to seize defendant and to perform a pat down search.

[2] We next address the question of whether or not Officer Faulkenberry's search of defendant was more intrusive than was

necessary to assure himself that defendant was not dangerous. Since the filing of the briefs in this case, the United States Supreme Court decided the factually similar case of *Minnesota v. Dickerson*, 113 S.Ct. 2130, 124 L. Ed. 2d 334 (1993). In *Dickerson*, a police officer stopped a suspect and performed a routine pat down search. Although the search revealed no weapons, the officer became curious about a small lump in the front pocket of the defendant's jacket. The officer testified "I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane." *Id*. Believing the lump to be cocaine the officer reached into defendant's pocket and retrieved a small cellophane bag, confirming his suspicion.

On appeal, the Supreme Court addressed the narrow question of whether or not an officer may seize nonthreatening contraband detected during a pat down search. The Supreme Court held that such was permissible as long as the officer's search was within the bounds established by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). Supplying the rationale for its decision, the Supreme Court stated that:

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson* at 2137, 124 L. Ed. 2d at 346. Applying this "plain feel" exception to the facts before it, the Supreme Court held that the officer's search was not authorized by *Terry* because the incriminating character of the lump in defendant's pocket was not immediately apparent because the officer had to slide it through his fingers and otherwise manipulate the lump to determine its incriminating character.

In the present matter Officer Faulkenberry testified that while performing his pat down search he felt a package or a lump in defendant's pocket and that he could tell there were smaller pieces within the lump. At first blush, the present matter appears indistinguishable from *Dickerson*. However, upon closer examination there are several critical differences between the case at bar and *Dickerson*. In both *Dickerson* and the case at bar, the officer testified that he felt a lump and opined that it was cocaine. However, in

**STATE v. WILSON**

[112 N.C. App. 777 (1993)]

*Dickerson* there was additional testimony that the officer manipulated the contents of the defendant's pocket to form his opinion that the substance was cocaine, thus refuting any notion that the character of the contraband was immediately apparent to the officer. In the case at bar there is no such additional testimony that Officer Faulkenberry manipulated the contents of defendant's pocket or that he performed a search that was not permitted under *Terry*. The extent of Officer Faulkenberry's testimony was:

> As I was conducting the pat-down, I . . . started down the front and in his left breast pocket I felt a package or felt a lump. I could tell that there were small individual pieces inside of that lump and based on my past experience, I believed it to be a Controlled Substance, more than likely Crack.

Though Officer Faulkenberry's testimony sufficiently distinguishes this case from *Dickerson*, it still does not answer the ultimate question of whether the incriminating character of the lump in defendant's pocket was "immediately apparent." The resolution of this question is made difficult because the Supreme Court failed, for whatever reason, to provide a definition or a test for the phrase "immediately apparent." In fact, it has been suggested by one court that the "immediately apparent" test confuses "knowledge" and "suspicion" because an officer cannot truly verify the illegal character of a contraband substance without looking at it, and perhaps even testing it. *See United States v. Ross*, 827 F. Supp. 711 (S.D. Ala. 1993).

Since *Dickerson* was decided in June of this year, there have been several cases construing it. In *Ross*, the Southern District Court of Alabama held that the incriminating character of a matchbox found in the defendant's crotch during a lawful pat down was not immediately apparent because a matchbox is not contraband and it was irrelevant that the officer thought it contained cocaine. *Id.; see also State v. Parker*, 622 So. 2d 791 (La. App. 4th Cir. 1993) (removal of matchbox containing contraband not allowed because identity of contraband not readily apparent). Similarly, in *United States v. Winter*, 826 F. Supp. 33 (D. Mass. 1993), the Massachusetts District Court held that the "plain feel" rationale of *Dickerson* did not apply where the arresting officer repeatedly testified that he did not know the incriminating character of the contraband until he removed it. In contrast, the Wisconsin Court of Appeals upheld a trial court's denial of a motion to suppress

in light of *Dickerson* when the arresting officer testified that he immediately recognized the incriminating character of a plastic bag found in defendant's waistband during a pat down search. *State v. Buchanan*, 504 N.W.2d 400 (Wis. Ct. App. 1993). The court reasoned that "given what the officer knew about the storage of cocaine, his conclusions about the character of the plastic baggie [were] reasonable." *Id.* at 404. These cases clearly establish that the item seized must be contraband itself and that the officer must be aware of the incriminating character of the contraband before seizing such.

Although we feel that the facts of the present case most clearly resemble those in *Buchanan*, the above cases offer little more than case by case guidance and fall short of definitively answering the ultimate question of what is "immediately apparent." In resolving this question we are guided by search and seizure cases decided under the "plain view" exception to the Fourth Amendment, because the "immediately apparent" requirement is common to both the "plain view" exception and the "plain feel" exception. *See Minnesota v. Dickerson*, 113 S.Ct. 2130, 124 L. Ed. 2d 334 (1993) (requiring illegal character of contraband to be immediately apparent); *State v. Church*, 110 N.C. App. 569, 430 S.E.2d 462 (1993) (criminal character of object in plain view must be immediately apparent to justify its seizure). In *State v. White*, 322 N.C. 770, 370 S.E.2d 390, *cert. denied*, 488 U.S. 958, 102 L. Ed. 387 (1988), our Supreme Court held that in the context of the "plain view" exception the term "immediately apparent" is "satisfied if the police have probable cause to believe that what they have come upon is evidence of criminal conduct." *Id.* at 777, 370 S.E.2d at 395. Given this statement we need only determine whether Officer Faulkenberry had probable cause to believe that the contraband he felt during his pat down search was cocaine. *See e.g. State v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502 (1983) (plurality opinion) (during routine traffic stop, incriminating character of balloon was immediately apparent because officer had probable cause to believe that balloon contained narcotics). "Probable cause is a 'common sense, practical question' based on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *State v. Wallace*, 111 N.C. App. 581, 584, 433 S.E.2d 238, 240 (1993) (citation omitted). "The standard to be met when considering whether probable cause exists is the totality of the circumstances." *Id.* Based upon the fact that Officer Faulkenberry was called to the scene

to investigate alleged drug dealings and because he had made prior drug arrests in his seven years of service, we find that upon using his tactile senses, he had probable cause to believe that the contraband in defendant's pocket was cocaine. We hold that Officer Faulkenberry's search was no more intrusive than necessary because the incriminating character of the contraband substance was "immediately apparent" to him. We also distinguish this case from *Dickerson* because Officer Faulkenberry was in the midst of a weapon's search when he felt the contraband, whereas in *Dickerson* the officer had already convinced himself that defendant's pocket did not contain a weapon. We find that the facts of this case are distinguishable from those in *Dickerson* and affirm the trial court's denial of defendant's motion to suppress.

Affirmed.

Judges WELLS and MARTIN concur.