STATE OF NORTH CAROLINA v. SAMUEL TERRMAINE BENJAMIN, JR.

No. COA95-1278

(Filed 17 December 1996)

1. **Appeal and Error § 340 (NCI4th)— noncompliance with rule—discretion in the interest of justice—clear and specific record or transcript references**

   Although defendant did not comply with N.C. R. App. P. 10(c) in that defendant made an assignment of error to the denial of a motion to suppress without making a reference to the inculpatory statement, the legal basis of his argument, or a reference to the record, the Court of Appeals at its discretion and in the interest of justice addressed defendant's argument.

   **Am Jur 2d, Appellate Review §§ 648 et seq.**

2. **Evidence and Witnesses § 1237 (NCI4th)— inculpatory statements—pat-down search—traffic violation—Miranda warnings not given**

The trial court did not err in denying defendant's motion to suppress defendant's inculpatory statement which was made subsequent to defendant being stopped for a traffic violation and after he was asked, "What is that?" during a pat-down search. Defendant's motion was made on the ground that his *Miranda* warnings were not given as soon as defendant was not free to leave. The fact that a defendant is not free to leave does not necessarily constitute custody for purposes of *Miranda*.

**Am Jur 2d, Criminal Law §§ 791-795.**

3. **Searches and Seizures § 58 (NCI4th)— motion to suppress—traffic violation—pat-down search—narcotic immediately apparent—did not exceed permissible bounds**

The trial court did not err in denying defendant's motion to suppress evidence on the grounds that the evidence was seized from defendant in an illegal search and seizure. It became immediately apparent to the arresting police officer that the containers in defendant's pocket held crack when the officer felt them through defendant's jacket subsequent to stopping defendant for a traffic violation and during a pat-down search given the officer's experience, narcotics training, the size, shape and mass of the objects, and defendant's response to the officer's question, "What is that?" It was at that moment that the officer had probable cause to seize the objects. There is no evidence of record to indicate that the officer manipulated the objects in a manner so as to make the search unlawful under *Dickerson*. Furthermore, a brief verbal inquiry as to the identity of the objects does not exceed the permissible bounds of a *Terry* search.

**Am Jur 2d, Searches and Seizures § 161.**

4. **Appeal and Error § 418 (NCI4th)— assignments of error— abandoned**

Assignments of error that defendant failed to bring forth or argue in his brief were deemed abandoned. N.C. R. App. P. 28(a).

**Am Jur 2d, Appellate Review §§ 678 et seq.**

Appeal by defendant from judgments entered 5 April 1995 by Judge Louis B. Meyer in Buncombe County Superior Court. Heard in the Court of Appeals 18 November 1996.

STATE v. BENJAMIN

[124 N.C. App. 734 (1996)]

Around midnight on 20 November 1994 Officers Anderson and Johnson of the Buncombe County Sheriff's Department participated in a driver's license check point in an attempt to apprehend drunk drivers. In the vicinity of the check point, the officers noticed defendant's van sit through two or three cycles of a traffic light on Haywood Street; Haywood Street leads to an area known for drug trafficking. The officers got into their patrol car and approached defendant's van. The officers could not see through the windows of defendant's car, but they noticed that the van was rocking back and forth as if there was a great deal of movement inside the van. The van was stopped in a right turn only lane and continued to sit through two more changes of the light. On the third change of the light the van proceeded straight through a red light. Had the van turned right, it would have entered the license check point. After the officers activated their lights and siren the van continued straight for a short while and then pulled over into a parking lot. The officers noticed that there was still a lot of movement in the van.

Officer Anderson got out of the patrol car and approached the driver's side of the vehicle. He asked defendant, the driver, to get out of the vehicle and walk back to the patrol car. Officer Anderson directed defendant to place his hands on the patrol car so that he could pat him down in order to check for weapons. As Officer Anderson was patting defendant down, he felt that there were two hard plastic containers in the top, left, breast pocket of defendant's winter jacket. Because of his narcotics training, it was immediately apparent to him that this container was a vial of the type that is customarily used to hold illegal drugs. When Officer Anderson felt the container through defendant's jacket, he asked defendant, "What is that?" Defendant responded that it was "crack." Officer Anderson removed two containers from defendant's coat pocket and quickly finished his weapons search. Throughout the search defendant was not free to leave. Subsequently, the officers placed defendant under arrest. Laboratory test results determined the containers obtained from defendant held 53.6 grams of cocaine.

By true bills of indictment returned 9 January 1995 defendant was charged with trafficking in cocaine by transportation and possession. On 27 February 1995 defendant made a motion to suppress the evidence of the containers of cocaine and his inculpatory statement. On 5 April 1995 the trial court denied the motion to suppress. Defendant entered a guilty plea to trafficking by possession and transportation. Defendant appeals pursuant to G.S. 15A-979(b) (1988).

**STATE v. BENJAMIN**

[124 N.C. App. 734 (1996)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas D. Zweigart, for the State.*

*Whalen, Hay, Pitts, Hugenschmidt, Master & Devereux, P.A., by Sean P. Devereux, for defendant-appellant.*

EAGLES, Judge.

[1] The first issue here is whether defendant waived his right to appellate review of the denial of his motion to suppress his inculpatory statement. Defendant made an assignment of error to the denial of the motion to suppress without making a reference to the inculpatory statement, the legal basis of his argument, and making reference to the record; however, he did provide general references to the transcript of the hearing. N.C.R. App. P. 10(c) provides that an assignment of error is sufficient to preserve defendant's right to appeal if "it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." Although defendant has not complied with Rule 10(c), we address his argument at our discretion in the interest of justice. We also note that defendant has failed to make reference to his assignments of error in his brief as required by N.C.R. App. P. 28(b)(5).

[2] The second issue is whether the trial court erred in denying defendant's motion to suppress defendant's inculpatory statement made during the pat down search on the grounds that *Miranda* warnings were not given as soon as defendant was not free to leave. Defendant contends that he was in police custody for purposes of the Fifth Amendment of the United States Constitution when he was asked, "What is that?" during the pat-down search. He urges that once the investigative stop by police became more intrusive than allowed by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968), defendant should have been given his *Miranda* warnings and any answer he gave to the officers should have been suppressed. On this record, we disagree.

Generally, a defendant in custody must be made aware of his right not to incriminate himself and his right to counsel before his answers to police questions will be available to the State as evidence at trial. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 16 L. Ed. 2d at 706. The test to determine if defendant is in custody is

whether a reasonable person in defendant's position would believe that he was under arrest or the functional equivalent of arrest. *Stansbury v. California*, 511 U.S. 318, ——, 128 L. Ed. 2d 293, 298 (1994). Furthermore, the initial determination of custody for purposes of *Miranda* is an objective one; the subjective views of the interrogating officers or the person being questioned are not relevant. *See id.* In *Berkemer v. McCarty*, 468 U.S. 420, 439-40, 82 L. Ed. 2d 317, 334-35 (1984) the United States Supreme Court held that a motorist subject to a traffic stop who is asked to leave his car is not in custody for purposes of *Miranda* and roadside questioning under those circumstances is permissible. *See also State v. Beasley*, 104 N.C. App. 529, 532, 410 S.E.2d 236, 238 (1991) (while defendant sitting in back of patrol car, questioning defendant about how much he had been drinking did not constitute custodial interrogation under *Miranda*). The Supreme Court also found that the noncoercive aspect of ordinary traffic stops prompted it to hold that a pat-down search pursuant to *Terry v. Ohio* does not invoke the *Miranda* rule even though the person may be detained and questioned concerning an officer's suspicions in a manner that may amount to a seizure under the Fourth Amendment. *Berkemer*, 468 U.S. at 439-40, 82 L. Ed. 2d at 334-35. It is only when the suspect's "freedom of action is curtailed to a 'degree associated with formal arrest' " that the safeguards of *Miranda* become applicable. *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275 (1983) (per curiam)).

As discussed above, the fact that a defendant is not free to leave does not necessarily constitute custody for purposes of *Miranda.* After all, no one is free to leave when they are stopped by a law enforcement officer for a traffic violation. Any investigative action that the police must take at traffic stops in order to evaluate their safety and the circumstances surrounding the traffic violation, and that does not rise to the level of custodial interrogation, should not require *Miranda* warnings. Accordingly, we conclude that no reasonable person in defendant's position at the time defendant made the inculpatory statement would have thought that they were in custody for purposes of *Miranda.*

Defendant also contends that the failure to give *Miranda* warnings caused the drug containers and contents to be "fruits" of an illegal search. Because we have already determined that defendant was not in custody for purposes of requiring *Miranda* warnings, we find this argument unpersuasive.

STATE v. BENJAMIN

[124 N.C. App. 734 (1996)]

**[3]** The third issue is whether the trial court erred in denying defendant's motion to suppress evidence on the grounds that the evidence was seized from defendant in an illegal search and seizure. We note that defendant does not contend that the officers did not have reasonable suspicion to initiate a weapons pat-down search as allowed under *Terry v. Ohio*. However, defendant does contend that it was not immediately apparent to Officer Anderson that the containers held crack when he felt them through defendant's jacket during the pat-down search; therefore, defendant opines that any investigative inquiries after that time exceeded the bounds of a search for weapons authorized by *Terry v. Ohio*. We disagree.

In *Terry v. Ohio* the United States Supreme Court held that when a police officer observes unusual behavior which leads him to conclude, in light of his experience, that criminal activity may be occurring and that the person may be armed and dangerous, the officer is permitted to conduct a pat-down search without a warrant to determine whether the person is carrying a weapon. *Terry*, 392 U.S. at 30-31, 20 L. Ed. 2d at 911. The purpose of a limited search under *Terry* is not to discover evidence of a crime, but to allow the officer to pursue his investigation in safety. *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617 (1972); *see State v. Beveridge*, 112 N.C. App. 688, 693, 436 S.E.2d 912, 915 (1993), *affirmed*, 336 N.C. 601, 444 S.E.2d 223 (1994). If evidence is obtained when an officer exceeds the permissible bounds of a *Terry* search, then it is inadmissible. *Id.* However, if an officer, while conducting a lawful *Terry* search for weapons, discovers contraband, it is proper for the officer to seize the item discovered. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76, 124 L. Ed. 2d 334, 346 (1993); *In re Whitley*, 122 N.C. App. 290, 293, 468 S.E.2d 610, 612, *disc. review denied*, 334 N.C. 437, 476 S.E.2d 132 (1996); *State v. Wilson*, 112 N.C. App. 777, 780, 437 S.E.2d 387, 388 (1993). A seizure of contraband found during a pat-down search for weapons is allowed under what has been termed the "plain feel" exception to the per se rule against unlawful searches and seizures. *Id.* The "plain feel" exception provides that when an officer conducts a lawful pat-down search for weapons and feels an object whose shape, size, and mass "makes its identity immediately apparent, there has been no invasion of privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." See *id.* In short, once it is immediately apparent to an officer conducting a lawful pat-down search for

weapons that the item he feels or sees is contraband, the officer then has probable cause to seize the item. *Id.*

This Court has grappled with the "plain feel" exception and analyzed various factual scenarios to determine in each case whether it was immediately apparent to the officer conducting the weapons pat-down search that the object he felt or saw was contraband. *See In re Whitley*, 122 N.C. App. at 293, 468 S.E.2d at 612; *Beveridge*, 112 N.C. App. at 695, 436 S.E.2d at 916; *Wilson*, 112 N.C. App. at 781-83, 437 S.E.2d at 389-90; *State v. Sanders*, 112 N.C. App. 477, 483, 435 S.E.2d 842, 846 (1993). This Court has followed or distinguished cases from *Dickerson* by considering whether the officer manipulated the object in such a manner that the officer's conduct went beyond the permissible boundaries of a legitimate *Terry* search, and therefore, was so intrusive as to violate the United States Constitution. *See id.* No North Carolina decisions have determined whether an unlawful search results when an officer makes a brief verbal inquiry as to the contents of an object that he feels while he is conducting a lawful *Terry* search. The analogous cases seem to indicate that an officer may make reasonable inquiries during a traffic stop and *Terry* pat-down search. *See Berkemer*, 468 U.S. at 439-40, 82 L. Ed. 2d at 334-35; *Adams*, 407 U.S. at 146, 32 L. Ed. 2d at 617; *Beasley*, 104 N.C. App. at 532, 410 S.E.2d at 238. Other jurisdictions have concluded that it is not improper to ask a suspect the nature of an object in his pocket during a lawful *Terry* search even after the officer has determined that the object is not a weapon. *State v. Scott*, 518 N.W. 2d 347, 350, *cert. denied*, —— U.S. ——, 130 L.Ed. 2d 421 (1994); *see State v. Toro*, 551 A.2d 170, 173 (1988), *cert. denied*, 570 A.2d 973 (1989); *State v. Harris*, 78 Cal. Rptr. 153 (1969); *Shy v. State*, 218 S.E.2d 599, 604 (1975).

Here Officer Anderson felt the objects on defendant's person during a legitimate pat-down search and, based on his experience, believed that the objects held contraband. Officer Anderson spontaneously asked defendant, "What is that?" When defendant promptly responded, "crack," Officer Anderson removed the two vials containing cocaine and promptly completed his pat-down for weapons. Given the officer's experience, narcotics training, the size shape and mass of the objects, and defendant's response to Officer Anderson's question, it became immediately apparent to Officer Anderson that the objects contained contraband. It was at that moment that Officer Anderson had probable cause to seize the objects. There is no evidence of record to indicate that Officer Anderson manipulated the

GUILFORD COUNTY BD. OF COMRS. v. TROGDON

[124 N.C. App. 741 (1996)]

objects in a manner so as to make the search unlawful under *Dickerson*. Furthermore, we find that the brief verbal inquiry as to the identity of the objects did not exceed the permissible bounds of a *Terry* search. Had Officer Anderson seized the items after defendant had made no response to the officer's question, or defendant had answered that the object contained something other than contraband, our analysis would necessarily be far different. Here the trial court correctly concluded that there was the requisite probable cause to seize the crack vials. This assignment of error fails.

[4] Assignments of error that defendant has failed to bring forth or argue in his brief are deemed abandoned pursuant to N.C.R. App. P. 28(a).

Affirmed.

Chief Judge ARNOLD and Judge MARTIN, Mark D., concur.