STATE OF NORTH CAROLINA v. JAMES EDWIN SUTTON, DEFENDANT

No. COA03-1351

(Filed 7 December 2004)

**1. Appeal and Error— assignments of error—failure to prop-
erly assign error**

A single assignment of error generally challenging the suffi-
ciency of the evidence to support numerous findings of fact is
broadside and ineffective, and thus, the findings of fact are
deemed supported by competent evidence and are binding on
appeal.

STATE v. SUTTON

[167 N.C. App. 242 (2004)]

**2. Search and Seizure— investigatory stop—motion to suppress evidence—trafficking in OxyContin**

The trial court did not err in a trafficking by sale or delivery of OxyContin case by denying defendant's motion to suppress evidence obtained during an investigatory stop of defendant's motorcycle in the parking lot of a drug store, because: (1) the stop was based on the tip of a pharmacist as well as the officer's own observations; and (2) the pharmacist's information combined with the officer's own observations provided reasonable suspicion that criminal activity was afoot justifying a *Terry* stop.

**3. Confessions and Incriminating Statements— motion to suppress—custody**

The trial court did not err in a trafficking by sale or delivery of OxyContin case by denying defendant's motion to suppress statements he made to an officer even though defendant was not read Miranda warnings before he was questioned, because: (1) no reasonable person in defendant's position at the time defendant made the inculpatory statement would have thought that they were in custody for purposes of Miranda; and (2) the mere fact that an officer performed an investigative stop of defendant and then patted him down did not result in defendant being in custody, and the officer's questions were brief and directly related to the suspicion that gave rise to the stop.

**4. Criminal Law— fruit of poisonous tree doctrine— applicability**

The fruit of the poisonous tree doctrine was inapplicable in a trafficking by sale or delivery of OxyContin case, because: (1) the trial court properly denied defendant's motion to suppress the evidence; and (2) the record contained substantial evidence of each element of the crime and showed that defendant was the perpetrator.

Appeal by defendant from judgment entered 26 March 2003 by Judge James L. Baker, Jr. in Haywood County Superior Court. Heard in the Court of Appeals 10 June 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gary R. Govert, for the State.*

*James N. Freeman, Jr., for defendant-appellant.*

STATE v. SUTTON

[167 N.C. App. 242 (2004)]

GEER, Judge.

Defendant James Edwin Sutton appeals from the denial of his motion to suppress evidence presented during his jury trial on charges of trafficking in OxyContin, a prescription opiate painkiller. Defendant contends the evidence should have been suppressed because it was obtained following a stop that violated his Fourth Amendment rights and an interrogation that violated his *Miranda* rights. Because the totality of the circumstances prior to the stop gave rise to a reasonable, articulable suspicion that criminal activity was afoot, we affirm the trial court's conclusion that the stop did not violate defendant's Fourth Amendment rights. As to defendant's contention that his *Miranda* rights were violated by the officer's interrogation, we agree with the trial court that defendant was not "in custody" and accordingly that *Miranda* warnings were not necessary prior to the officer's inquiry. We therefore affirm the trial court's denial of defendant's motion to suppress.

## Standard of Review

Review of a trial court's denial of a motion to suppress is limited to a determination whether the trial court's findings of fact are supported by competent evidence and whether those findings support the trial court's ultimate conclusions of law. *State v. Thompson*, 154 N.C. App. 194, 196, 571 S.E.2d 673, 675 (2002). The trial court's findings are conclusive if supported by competent evidence, even if the evidence is conflicting. *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001).

[1] We note at the outset that defendant assigned error to only one specific finding of fact; he did not, however, address that particular finding in his brief. With respect to the remaining findings of fact, defendant stated only:

> That the trial court erred in finding all the facts contained in its Order given in open court denying Defendant's Motion to Suppress because there was no competent evidence presented to the Court by which these findings of fact could be made in violation of the Fourth and Fourteenth Amendments to the United States Constitution; Article I, Sections 19, 20, 23, 35 and 36 of the North Carolina Constitution[;] and other applicable North Carolina law.

It is well-established that "[a] single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact,

as here, is broadside and ineffective." *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). *See also State v. Kirby*, 276 N.C. 123, 131, 171 S.E.2d 416, 422 (1970) ("This assignment—like a hoopskirt—covers everything and touches nothing. It is based on numerous exceptions and attempts to present several separate questions of law—none of which are set out in the assignment itself—thus leaving it broadside and ineffective."). Because defendant has failed to properly assign error to the trial court's findings of fact, they are deemed supported by competent evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

## Facts

The trial court made the following findings following the suppression hearing. On 2 October 2002, Officer Sean Sojack of the Waynesville Police Department was paged by the Village Pharmacy. When Officer Sojack returned the call, he spoke with a pharmacist with whom he had worked on prior occasions in connection with forged prescriptions. The pharmacist reported that a man who had arrived on a motorcycle—defendant James Edwin Sutton—had come into the drugstore with a prescription for OxyContin, had asked how much the prescription would cost, and then had said he would "get the money together." The pharmacist told Officer Sojack that defendant went to a truck in the pharmacy parking lot, returned to the store with money, and was waiting for his prescription to be filled.

Based on this information, Officer Sojack and other officers drove to the pharmacy parking lot. Officer Sojack parked his unmarked car about 200 feet away from the lot and, using binoculars, set up surveillance on the lot. After Officer Sojack notified the pharmacist that he was at the parking lot, the pharmacist told him the prescription was valid and asked what he should do. Officer Sojack advised him to fill it. The pharmacist also gave Officer Sojack a description of defendant's physical appearance and his clothes.

Officer Sojack observed defendant emerge from the pharmacy and approach a Ford pickup truck in the parking lot. Defendant climbed into the driver's side of the truck; another person was already sitting in the passenger seat. A third person came up to the driver's side and leaned on the window.

Officer Sojack, who testified that he could see inside the truck with his binoculars, saw defendant pour something into his own hand

**STATE v. SUTTON**

[167 N.C. App. 242 (2004)]

and then transfer it into the outstretched hand of the person in the passenger seat. Based on his training and experience, Officer Sojack believed he had observed a drug transaction.

Defendant then exited the truck and got on his motorcycle. The person who had been standing on the driver's side of the truck climbed into the truck's driver's seat. Officer Sojack signaled other officers to block the pickup truck's exit from the parking lot and drove toward defendant's motorcycle with his blue lights on. Defendant had started the motorcycle, but he had not yet moved. Officer Sojack got out of his car, approached defendant, and asked if he could speak with him. Defendant agreed, and Officer Sojack then asked if he could pat defendant down. Defendant consented and told Officer Sojack that he had two knives. Officer Sojack found two pocket knives, but no contraband during the pat-down. When he asked if defendant had any narcotics, defendant said he had just filled a prescription. Officer Sojack took a pill bottle containing tablets from defendant.

Officer Sojack examined the bottle and asked how many tablets were inside the bottle. Defendant said he had filled a prescription for 180 tablets. Officer Sojack testified that he again asked defendant how many pills were in the bottle, and defendant responded that he had given 45 tablets to a person in the truck. Officer Sojack placed defendant under arrest. The passenger in the truck was also charged as a result of the transaction observed by Officer Sojack.

Defendant was indicted with trafficking by possession, by sale or delivery, and by transportation of OxyContin. Defendant filed a motion to suppress with respect to the statements he made and evidence recovered on 2 October 2002, arguing that he had been stopped in violation of his Fourth Amendment rights and that he had been questioned in violation of his *Miranda* rights. The trial court denied the motion, and the jury returned a verdict finding defendant guilty of trafficking by sale or delivery of OxyContin. The trial court sentenced defendant to a term of 70 months to 84 months imprisonment.

I

**[2]** Defendant contends that the trial court erred in not concluding that he was subjected to an unreasonable search and seizure in violation of the Fourth Amendment. *"Terry v. Ohio* and its progeny have taught us that in order to conduct a warrantless, investigatory stop, an officer must have reasonable and articulable suspicion of criminal activity." *State v. Hughes*, 353 N.C. 200, 206-07, 539 S.E.2d 625, 630

(2000). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695 (1981)). "Reasonable suspicion" requires that the stop be based on specific, articulable facts—as well as the rational inferences from those facts—as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. *Id.* "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'" *Id.* at 442, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)). This Court reviews *de novo* the trial court's conclusion of law that a reasonable, articulable suspicion existed to justify the stop. *State v. Jacobs*, 162 N.C. App. 251, 255, 590 S.E.2d 437, 440 (2004).

Defendant contends the stop was unconstitutional because it was based on a tip that lacked sufficient indicia of reliability. The stop was not, however, based solely on the tip of the pharmacist, but rather arose out of Officer Sojack's own observations as well. The trial court properly considered those observations, together with the pharmacist's information, in reviewing the "totality of the circumstances" existing prior to the *Terry* stop.

Here, the officer was notified by a pharmacist—with whom he had been working on an ongoing basis to uncover illegal activity involving prescriptions—of information suggesting that defendant might be unlawfully purchasing OxyContin for another person. The fact that defendant, who had arrived on a motorcycle, went to a truck to "get the money together" for his prescription did not necessarily mean that defendant was engaging in illegal activity, but it did raise a suspicion. Following up on this information, Officer Sojack personally observed defendant leave the pharmacy, climb into the truck, and engage in what Officer Sojack believed, based on his training and experience, was an illegal drug transaction.

The pharmacist's information combined with the officer's own observations provided reasonable suspicion that criminal activity was afoot, justifying a *Terry* stop. *See State v. Carmon*, 156 N.C. App. 235, 240-41, 576 S.E.2d 730, 735 (officer's observation, at night time, of defendant receiving a package and his belief, based on experience, that he had seen a drug transaction was sufficient to raise a reasonable suspicion), *aff'd per curiam*, 357 N.C. 500, 586 S.E.2d 90 (2003);

*State v. Sanchez*, 147 N.C. App. 619, 624-25, 556 S.E.2d 602, 607 (2001) (reasonable suspicion supported investigatory stop based on information supplied in person to officer followed by officer's own investigation and observation), *disc. review denied*, 355 N.C. 220, 560 S.E.2d 358 (2002). The trial court, therefore, properly concluded that defendant's Fourth Amendment rights were not violated when Officer Sojack stopped him.

II

[3] Defendant next contends his statements to Officer Sojack should have been suppressed because he was not read *Miranda* warnings before he was questioned. Our Supreme Court has held "that failure to administer *Miranda* warnings in 'custodial situations' creates a presumption of compulsion which would exclude statements of a defendant. Therefore, the initial inquiry in determining whether *Miranda* warnings were required is whether an individual was 'in custody.' " *State v. Buchanan*, 353 N.C. 332, 336-37, 543 S.E.2d 823, 826 (2001) (internal citations omitted). That question is answered by determining, "based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Id.* at 339, 543 S.E.2d at 828 (quoting *State v. Daughtry*, 340 N.C. 488, 506-07, 459 S.E.2d 747, 755 (1995)). *See also State v. Benjamin*, 124 N.C. App. 734, 737-38, 478 S.E.2d 651, 653 (1996) ("The test to determine if defendant is in custody is whether a reasonable person in defendant's position would believe that he was under arrest or the functional equivalent of arrest.").

We find this case to be indistinguishable from *Benjamin*. In *Benjamin*, after a police officer conducted a *Terry* stop of the defendant's van, the officer asked the defendant to place his hands on the patrol car so that he could be patted down for weapons. *Id.* at 736, 478 S.E.2d at 651. During the pat-down, the officer felt two hard, plastic containers in the defendant's pocket that he recognized, based on his training and experience, as the type used to hold cocaine. He asked the defendant, "What is that?" The defendant immediately responded that it was "crack." *Id.*

In considering these facts, the *Benjamin* Court first explained:

In *Berkemer v. McCarty*, 468 U.S. 420, 439-40, 82 L. Ed. 2d 317, 334-35 (1984) the United States Supreme Court held that a motorist subject to a traffic stop who is asked to leave his car

is not in custody for purposes of *Miranda* and roadside question-ing under those circumstances is permissible. . . . The Supreme Court also found that the noncoercive aspect of ordinary traffic stops prompted it to hold that a pat-down search pursuant to *Terry v. Ohio* does not invoke the *Miranda* rule even though the person may be detained and questioned concerning an officer's suspicions in a manner that may amount to a seizure under the Fourth Amendment.

*Id.* at 738, 478 S.E.2d at 653. In response to the defendant's contention that when stopped, he was not free to leave, the Court observed:

[T]he fact that a defendant is not free to leave does not necessar-ily constitute custody for purposes of *Miranda*. After all, no one is free to leave when they are stopped by a law enforcement offi-cer for a traffic violation. Any investigative action that the police must take at traffic stops in order to evaluate their safety and the circumstances surrounding the traffic violation, and that does not rise to the level of custodial interrogation, should not require *Miranda* warnings.

*Id.* Based on the facts in the record, indistinguishable from those present in this case, this Court held that "no reasonable person in defendant's position at the time defendant made the inculpatory statement would have thought that they were in custody for purposes of *Miranda*." *Id.*

If *Benjamin* did not involve a custodial interrogation, then the facts of this case cannot give rise to a finding that defendant was in custody. The mere fact that Officer Sojack performed an investigative stop of defendant and then patted him down did not result in defend-ant being "in custody" for purposes of *Miranda*. Further, his ques-tions were brief and directly related to the suspicion that gave rise to the stop. Our Supreme Court has held that "[a]fter a lawful stop, an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions." *State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). *See also State v. Martinez*, 158 N.C. App. 105, 110, 580 S.E.2d 54, 58 ("We additionally conclude, in following our holding in *Benjamin*, that the officer's brief inquiry as to the contents of the object in defendant's right pocket was not improper. Upon defendant's response that his right pocket contained 'dope,' the officer properly seized the currency and cocaine resulting in defendant's arrest."), *appeal dismissed and disc. review denied*, 357 N.C. 466, 586 S.E.2d 773 (2003); *Benjamin*, 124

N.C. App. at 741, 478 S.E.2d at 655 ("[The officer's] brief verbal inquiry . . . did not exceed the permissible bounds of a *Terry* search."). The trial court correctly concluded that *Miranda* did not apply to the brief investigatory detention in this case and in denying defendant's motion to suppress.

### III

[4] Defendant asserts two additional arguments contingent on his argument that the trial court erred in denying his motion to suppress: (1) that the trial court should have excluded all statements and exhibits obtained during the stop and interrogation as fruit of the poisonous tree, *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); and (2) that the trial court should have granted his motion to dismiss because in the absence of the evidence obtained during the stop, the evidence was insufficient to support a conviction. As we have held that the trial court properly denied the motion to suppress, the fruit of the poisonous tree doctrine is inapplicable. Since the evidence was properly admissible, the record contains substantial evidence of each element of the crime and that defendant was the perpetrator. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).

Affirmed.

Judges HUDSON and THORNBURG concur.