An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1355

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.

Mecklenburg County
No. 10 CRS 256238

LUCAS A. NELSON

Appeal by defendant from judgment entered 2 August 2013 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Angel E. Gray, for the State.*

> *Law Office of Christopher W. Shelburn, PLLC, by Christopher W. Shelburn, for Defendant.*

ERVIN, Judge.

Defendant Lucas Nelson appeals from a judgment sentencing him to a term of 6 months imprisonment based upon his conviction for driving while impaired, with this sentence having been suspended and with Defendant having been placed on supervised probation for a period of 24 months on the condition that he serve an active term of 30 days imprisonment, pay a fine of $500 and the costs, surrender his driver's license and not operate a

motor vehicle until properly licensed to do so, and comply with the usual terms and conditions of probation. On appeal, Defendant contends that the trial court erred by denying his motion to suppress evidence seized as the result of the stopping of his motor vehicle on the grounds that the trial court's findings of fact did not support its conclusion that the challenged seizure was supported by the necessary reasonable articulable suspicion. After careful consideration of Defendant's challenge to the trial court's judgment in light of the record and the applicable law, we conclude that the trial court's judgment should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

At approximately 1:35 a.m. on 21 November 2010, Officer B.J. Lambe of the Charlotte-Mecklenburg Police Department was dispatched to investigate a report concerning a possibly impaired driver. According to a call placed to 911, an individual determined to be a Mr. Crossland reported having observed the driver of a pickup truck bearing Pennsylvania license plate number YXW-6415 in the parking lot of the Walmart located at 8180 South Tryon Street in Charlotte stumbling and appearing to be impaired. According to the caller, the individual in question had walked into the Walmart, remained

inside for about ten minutes, and then returned to his pickup truck.

About ten minutes after receiving this report, Officer Lambe reached the Walmart parking lot. As Officer Lambe entered the parking lot, the caller flagged him down and directed his attention to the pickup truck, which was exiting the parking lot. As a result, Officer Lambe followed the pickup truck out of the parking lot and into the adjoining street. After following the pickup truck for approximately one-half mile, Officer Lambe caught up to the truck at an intersection and activated his blue lights and siren. The driver of the pickup truck, who turned out to be Defendant, continued driving for approximately 50 seconds after Officer Lambe activated his blue lights and siren before pulling into an apartment complex and stopping. After he stopped Defendant's pickup truck, Officer Lambe asked the dispatcher to have the caller come to the location at which the stop had occurred. As a result, Mr. Crossland came to the scene and spoke with Officer Lambe.

## B. Procedural History

On 21 November 2010, a citation charging Defendant with driving while impaired was issued. On 14 April 2011, Defendant entered a plea of guilty to driving while impaired before Judge Matthew J. Osman in the Mecklenburg County District Court.

Based upon Defendant's plea, Judge Osman entered a judgment sentencing Defendant to a term of 12 months imprisonment, with this sentence being suspended and Defendant being placed on supervised probation for 18 months on the condition that Defendant serve an active term of 15 days imprisonment, pay a fine of $200.00 and the costs, obtain a substance abuse assessment and comply with any treatment recommendations, and comply with the usual terms and conditions of probation. Defendant noted an appeal from Judge Osman's judgment to the Mecklenburg County Superior Court for a trial *de novo*.

On 20 February 2012, Defendant filed a motion to suppress any evidence obtained as the result of the stopping of his vehicle. The charges against Defendant came on for hearing before the trial court at the 29 July 2013 criminal session of the Mecklenburg County Superior Court. After the trial court held a hearing concerning the merits of Defendant's suppression motion on 2 August 2013 and announced its intention to deny Defendant's motion and after Defendant properly preserved his right to challenge the denial of his suppression motion on appeal by providing the required notice to the State and to the trial court, Defendant entered a plea of guilty to driving while impaired. After accepting Defendant's guilty plea and conducting the required sentencing hearing, the trial court

entered a judgment sentencing Defendant to a term of 6 months imprisonment, suspended that sentence, and placed Defendant on supervised probation for 24 months on the condition that he serve an active term of 30 days imprisonment, pay a fine of $500.00 and the costs, obtain a substance abuse assessment and complete all recommended treatment, surrender his driver's license and not operate a motor vehicle until properly licensed to do so, and comply with the usual terms and conditions of probation. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Legal Analysis

In his sole challenge to the trial court's judgment, Defendant contends that the trial court erred by denying his motion to suppress the evidence seized as a result of the stopping of his vehicle. More specifically, Defendant contends that Officer Lambe did not have any basis for determining that the informant was credible and that the information contained in the informant's tip did not suffice to establish the reasonable articulable suspicion necessary to support the stopping of Defendant's vehicle. We do not find Defendant's argument persuasive.

## A. Standard of Review

The standard of review utilized in evaluating the validity of a challenge to an order granting or denying a suppression motion is well-established.

> Review of a trial court's denial of a motion to suppress is limited to a determination whether the trial court's findings of fact are supported by competent evidence and whether those findings support the trial court's ultimate conclusions of law. The trial court's findings are conclusive if supported by competent evidence, even if the evidence is conflicting.

*State v. Sutton*, 167 N.C. App. 242, 244, 605 S.E.2d 483, 484-85 (2004) (internal citations omitted), *disc. review denied*, 359 N.C. 326, 611 S.E.2d 847 (2005). In the event that the defendant, as is the case in this instance, fails to challenge the sufficiency of the evidentiary support for the trial court's findings of fact, "those findings are conclusive and binding on appeal." *State v. Robinson*, 187 N.C. App. 795, 797, 653 S.E.2d 889, 891 (2007). As a result, the sole question presented for our consideration in this case "is whether the trial court's findings support its conclusions of law," *State v. Euceda-Valle*, 182 N.C. App. 268, 272, 641 S.E.2d 858, 862, *disc. review denied*, 361 N.C. 698, 652 S.E.2d 923 (2007), a decision which is subject to *de novo* review on appeal. *State v. Munoz*, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001).

## B. Validity of the Traffic Stop

### 1. Applicable Legal Standard

A police officer may conduct an investigatory stop when he "has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570, 576 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1879-80, 20 L. Ed. 2d 889, 911 (1968)). "Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (quoting *Wardlow*, 528 U.S. at 123, 120 S. Ct. at 675-76, 145 L. Ed. 2d at 576), *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008). The extent to which the reasonable suspicion necessary to justify the stopping of a vehicle exists must be determined based upon an analysis of the totality of the circumstances known to the officer, *State v. Hughes*, 353 N.C. 200, 203, 539 S.E.2d 625, 628 (2000), with the validity of the stop resting upon the extent to which "specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training," *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67,

70 (1994) (citing *Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906), justify that action.

"An informant's tip may provide the reasonable suspicion necessary for an investigative stop." *State v. Hudgins*, 195 N.C. App. 430, 434, 672 S.E.2d 717, 719 (2009). A critical portion of the analysis that must be conducted in determining whether actions resulting from information provided by others is assessing the reliability of that information, with a showing "that the informant had been used previously and had given reliable information, that the information given was against the informant's penal interest, that the informant demonstrated personal knowledge by giving clear and precise details in the tip, or that the informant was a member of a reliable group" all being relevant to the required constitutional analysis. *Hughes*, 353 N.C. at 203, 539 S.E.2d at 628. Thus, where an informant comes forward "personally to give information that was immediately verifiable at the scene," the reliability of that tip is enhanced, *Adams v. Williams*, 407 U.S. 143, 146-47, 92 S. Ct. 1921, 1923-24, 32 L. Ed. 2d 612, 617 (1972), since "an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion" in situations in which "the informant relays information to an officer face-to-face." *Hudgins*, 195

N.C. App. at 434, 672 S.E.2d at 719. The informant's proximity to the scene or the alleged criminal activity is also relevant to an evaluation of the credibility of information provided by an informant. *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000), *cert. denied*, 531 U.S. 1098, 121 S. Ct. 830, 148 L. Ed. 2d 712 (2001). On the other hand, "[w]here a tip is anonymous, it must be accompanied by some corroborative elements that establish the tip's reliability." *Hudgins*, 195 N.C. App. at 434, 672 S.E.2d at 720.

## 2. Nature of the Informant's Tip

As an initial matter, Defendant argues that the information provided by Mr. Crossland should be treated as an anonymous tip given that the 911 operator had no way to verify Mr. Crossland's identity and that Mr. Crossland's identity was not known to Officer Lambe at the time that he stopped Defendant. As we have already suggested, tips from known and reliable informants, tips provided directly to law enforcement officers, and anonymous tips are evaluated differently. *State v. Maready*, 362 N.C. 614, 619-20, 669 S.E.2d 564, 567-68 (2008) (emphasizing the fact that the informant voluntarily approached law enforcement officers and "gave them information at a time and place near to the scene of the alleged traffic violations," noting that the informant had "little time to fabricate her allegations against

defendant," and emphasizing that the informant "willingly placed her anonymity at risk" in determining that the tip was sufficiently reliable to justify an investigative detention); *Hudgins*, 195 N.C. App. at 434, 672 S.E.2d 719-20 (citing *Adams* at 146-47, 92 S. Ct. at 1923-24, 32 L. Ed. 2d at 617 (tip from a previously known informant); *Christmas*, 222 F.3d at 144 (face-to-face tip provided by a previously unknown source); *Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 1378, 146 L. Ed. 2d 254, 260 (2000) (anonymous tip); *Alabama v. White*, 496 U.S. 325, 329-31, 110 S. Ct. 2412, 2416-17, 110 L. Ed. 2d 301, 308-09 (1990) (analysis of the reliability of various types of tips)). In view of the fact that "[r]easonable suspicion, like probable cause, is dependent upon both the content of the information possessed by police and its degree of reliability" and the fact that "[b]oth factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion," the United States Supreme Court has clearly stated that, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *White*, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309 (quoting *United States v. Cortez*, 449 U.S. 411,

417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981)). For that reason, "a tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630. As a result, the relevant decisions governing the manner in which a reviewing court should determine the extent to which information provided by an informant suffices to establish the reasonable articulable suspicion required to support a valid investigative detention require reviewing courts to treat information obtained from different types of informants differently, with information supplied by informants with a proven track record of reliability to be given more credence than information supplied by informants who lack such a track record and with information supplied by informants whose identity is known, in whole or in part, to the relevant members of the law enforcement community to be given more credence than information supplied by informants about whom nothing of credibility-related value is known.

The trial court's undisputed findings of fact establish that Mr. Crossland had called 911; that Mr. Crossland waited in the Walmart parking lot for Officer Lambe and identified Defendant's pickup truck as it was leaving the Walmart parking

lot; and that Mr. Crossland met Officer Lambe at the scene of the stop. Based on these findings, we have no hesitation in concluding that the trial court did not err by determining that the information provided by Mr. Crossland to the 911 dispatcher and to Officer Lambe should not be evaluated as if it constituted a purely anonymous tip. Although Defendant analogizes the facts at issue here to those before the Court in *State v. Blankenship*, __ N.C. App. __, __, 748 S.E.2d 616, 618 (2013), in which we held that a taxi driver who placed a call to 911 using his personal cell phone without giving his name should be treated as an anonymous informant given that "the officers did not have the opportunity to judge [the informant's] credibility firsthand or confirm whether the tip was reliable" despite the fact that the informant's identity was later determined using the relevant phone records, we do not find this argument persuasive given that Mr. Crossland, unlike the informant at issue in *Blankenship*, called 911, remained in the Walmart parking lot until Officer Lambe arrived, and initiated a brief interaction with Officer Lambe. Similarly, the fact that neither Officer Lambe nor the 911 dispatcher had had any face-to-face contact with Mr. Crossland, while relevant to the required analysis, does not, standing alone, require us to treat Mr. Crossland as a purely anonymous informant. As a result, we

conclude, as the trial court did, that we should evaluate the validity of Officer Lambe's decision to stop Defendant's vehicle using an analysis that takes into consideration the fact that Mr. Crossland placed his anonymity at risk and remained in contact with law enforcement officers after the time that he contacted 911 and reported his observations of Defendant's condition.

### 3. Reliability of the Tip

In the second component of his challenge to the trial court's judgment, Defendant contends that the information available to Officer Lambe, which included the information provided by the 911 dispatcher and the observations that Officer Lambe made after arriving at the Walmart parking lot, did not suffice to establish the reasonable articulable suspicion needed to justify the stopping of Defendant's vehicle. More specifically, Defendant argues that neither the 911 dispatcher nor Officer Lambe had any opportunity to evaluate Mr. Crossland's credibility, that Officer Lambe's interaction with Mr. Crossland in the parking lot was of such short duration that Officer Lambe did not gain any additional relevant information at that time, and that the purely descriptive information available to Officer Lambe at the time that he stopped

Defendant's vehicle did not suffice to justify the resulting seizure. We do not find Defendant's argument persuasive.

The trial court's findings of fact clearly establish that Officer Lambe had the required reasonable articulable suspicion at the time that he stopped Defendant's vehicle. At the time that he contacted 911, Mr. Crossland gave specific details about his exact location, Defendant's vehicle, and the manner in which Defendant walked. The detailed nature of the information that Mr. Crossland provided to the 911 dispatcher, while primarily descriptive in nature, supports a determination that Mr. Crossland claimed "eyewitness knowledge," thereby "lend[ing] significant support to the tip's reliability." *Navarette v. California*, __ U.S. __, __, __ S. Ct. __, __, 188 L. Ed. 2d 680, 687 (2014). Moreover, Officer Lambe verified a portion of the descriptive information that Mr. Crossland provided to 911, since a truck matching the description that had been provided to the 911 dispatcher and relayed to Officer Lambe was observed leaving the Walmart parking lot at the time that Officer Lambe arrived on the scene shortly after having been contacted by the 911 dispatcher. *Id.* at __, __ S. Ct. at __, 188 L. Ed. 2d at 688. Moreover, Mr. Crossland placed a call to 911, utilizing a system that "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making

false reports," *id.* at __, __ S. Ct. at __, 188 L. Ed. 2d at 688, and remained at the scene in order to make certain that the responding officer investigated the correct vehicle. Finally, the conduct described in the call that Mr. Crossland placed to 911 is certainly consistent with the existence of impairment. *Id.* at __, __ S. Ct. at __, 188 L. Ed. 2d at 689-90. As a result, unlike the situations at issue in decisions such as *Blankenship*, __ N.C. App. at __, 748 S.E.2d at 620 (holding that an anonymous tip to the effect that a red Mustang convertible with a black top and a specific license plate was driving erratically on Patton Avenue did not establish the reasonable articulable suspicion necessary to justify a traffic stop since the officers "did not personally observe any unlawful behavior by defendant or have the opportunity to meet [the informant] prior to the stop"); *State v. Coleman*, __ N.C. App. __, __, 743 S.E.2d 62, 67 (2013) (holding that a tip emanating from a citizen whom investigating officers were later able to identify to the effect that a cup of beer was located in a gold Toyota sedan bearing a specific license plate parked at a Kangaroo gas station at the corner of Wake Forest Road and Ronald Drive did not establish the reasonable articulable suspicion needed to support an investigative detention given that the informant "did not identify or describe defendant, did not provide any way for

Officer Lampe to assess her credibility, failed to explain her basis of knowledge, and did not include any information concerning defendant's future actions"); *State v. Johnson*, 204 N.C. App. 259, 264-65, 693 S.E.2d 711, 715-16 (2010) (holding that an anonymous tip to the effect that "a black male suspect wearing a white shirt in a blue Mitsubishi with a certain license plate number" was "selling drugs and guns at the intersection of Pitt and Birch Streets" did not establish the reasonable articulable suspicion necessary to justify an investigative detention given that the record contained no information about the identity of the informant, no statement of the basis for the informant's knowledge, and no information about the caller's current location); *State v. Peele*, 196 N.C. App. 668, 674-75, 675 S.E.2d 682, 687 (holding that an anonymous tip to the effect that a burgundy Chevrolet pickup truck that was headed toward "the Holiday Inn intersection" was being driven by an impaired driver, coupled with the officer's observation that the driver had weaved once within his own lane, did not establish the reasonable articulable suspicion necessary to support an investigative detention), *disc. review denied*, 363 N.C. 587, 683 S.E.2d 384 (2009), we conclude that Officer Lambe did, in fact, have a reasonable articulable suspicion that Defendant was engaging in unlawful conduct and that the trial

court did not err by rejecting Defendant's contention to the contrary in the course of denying his suppression motion.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that Defendant's challenge to the trial court's judgment has no merit. As a result, the trial court's judgment should, and hereby does, remain undisturbed.

AFFIRMED.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).